# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| JOHN DOE,<br><br>　　　　　　Plaintiff<br><br>　　v.<br><br>TRUSTEES OF DARTMOUTH COLLEGE,<br><br>　　　　　　Defendant | Civil Action No: 1:24-cv-46-JL |

**DECLARATION OF KRISTI L. CLEMENS**

1.　　I am Assistant Vice President for Equity and Compliance at Dartmouth College. I also am Dartmouth's Title IX Coordinator, a position I have held since 2018. I have personal knowledge of the following.

2.　　I first became acquainted with "John Doe" in 2015, when he was an undergraduate student at Dartmouth. At that time, I was Dartmouth's Assistant Dean of the College and Director of Case Management.

3.　　My job responsibilities included, among other things, working with Dartmouth Safety and Security in connection with "threat assessments" involving Dartmouth students. These assessments routinely were conducted by me and Harry Kinne, the Director of Public Safety.

4.　　Mr. Kinne and I were asked to meet with Doe after a professor reported that Doe had engaged in threatening behavior during a class. I was informed that one of the Dartmouth Deans had met with Doe and had told him, "You look threatening because you are big and tall." I never was informed, and Doe at the time never alleged, that this Dean or anyone else referred to him as "tall, big and Black." I never referred to Doe as "threatening," "big, tall, and Black," or any words to that effect.

5.　　After Mr. Kinne and I met with Doe, I concluded that Doe had not engaged in

1

threatening behavior in the class, but instead merely felt disrespected by the professor and silenced. I believed there were some cultural differences at work along with miscommunication between Doe and the professor. I shared these conclusions with other Dartmouth administrators, including the dean assigned to this matter, advocating on Doe's behalf.

6. Another professor made a similar report of threatening behavior by Doe in a call in Spring 2016. I also advocated for Doe in this matter – advocating for his right to attend class and pushing back on some of the assumptions faculty had made about him.

7. Doe was appreciative of my support and until his graduation he continued to correspond with me about his accomplishments.

8. I understand that Doe alleges he reported "his concerns with professors" to me in 2016. I have no memory of this, nor do I have any record of it, as ordinarily would be the case if this occurred.

9. On December 19, 2022, "Sally Smith," a woman not affiliated with Dartmouth filed a formal complaint with Dartmouth's Title IX office, alleging that "John Doe" raped her in his off-campus apartment on the night of November 3, 2022.

10. Prior to filing her complaint, Smith met by Zoom with me.

11. I understand Doe alleges that someone at Dartmouth told Smith Doe's "name had been circulating around for a while" and there was a "behavioral pattern" that "somebody needed to look into." I never made any such statement to Smith and I have no knowledge of anyone else at Dartmouth making any such statement to Smith.

12. On December 20, 2022, I initiated a formal process on Smith's complaint against Doe pursuant to Dartmouth's Sexual and Gender-Based Misconduct Policy ("Sexual Misconduct Policy").

13. The Sexual Misconduct Policy applies primarily, but not exclusively, to complaints of sexual misconduct that occur in Dartmouth's "Education Program or Activity." The Policy provides that it also can apply in "limited circumstances" when the alleged sexual misconduct occurs outside of Dartmouth's Education Program or Activity.

14. I determined that Smith's allegation of rape was among the "limited circumstances" in which the Sexual Misconduct Policy will apply to conduct occurring outside Dartmouth's Education Program or Activity. I made this determination based upon the serious nature of the allegations and the fact that they involved a current student at Dartmouth. The allegations, if substantiated, would mean that a Dartmouth student had committed a violent sexual assault and thus could pose a threat to the Dartmouth community.

15. During my time as Dartmouth's Title IX Coordinator, Dartmouth consistently has applied the Sexual Misconduct Policy to analogous cases involving a member of the Dartmouth community but occurring outside its Education Program and Activity. There are two such cases:

16. In the Fall of 2020, a female complainant with no Dartmouth affiliation filed a formal complaint of sexual assault and relationship violence occurring at her college campus (not Dartmouth) and at a private residence in California. The respondent was a Latinx, male Dartmouth student. The Sexual Misconduct Policy in effect at that time provided that the Policy applied not only to conduct occurring in the context of Dartmouth's education programs and activities, but also to conduct that could have a "continuing adverse effect" on such a program or activity. The latter standard was satisfied because the allegations, if true, would mean that Dartmouth had a student in its community who was responsible for sexual assault and relationship violence, and Dartmouth is obligated under to maintain an environment free from such behavior under both its own policies and Title IX.

17. In August 2022, a female complainant with no Dartmouth affiliation filed a formal complaint against a white, male, Dartmouth undergraduate student, alleging sexual assault and dating violence which occurred off-campus. Dartmouth commenced an investigation pursuant to the Sexual Misconduct Policy, which had the same jurisdictional language as applied to Doe's case. Here, too, the serious nature of the allegations warranted Dartmouth's application of the Policy.

18. The case Doe cites as a "relevant example" of one in which I "refused to exercise jurisdiction of a complaint submitted by a man, on the basis that it was not part of a Dartmouth-sponsored or -controlled activity, and the allegations were beyond the scope of the [Sexual Misconduct Policy]" does not involve facts that are similar to Doe's case. Doe's attorneys know this, as it was their office that litigated the other case.

19. The male student in that case was accused of, and ultimately found responsible for, sexually assaulting a female student in a Dartmouth residence hall. During Dartmouth's investigation of the female student's complaint, the male student complained that a friend and roommate of the complainant had "retaliated" against him by removing him from an online chat group of Black students and alumni.

20. I determined that the Title IX office had no jurisdiction over the matter because Dartmouth did not sponsor and exercised no control over the online chat group and its activities were outside the scope of the Sexual Misconduct Policy. Unlike an allegation of sexual assault or dating violence, the allegation of exclusion from an online chat group did not present a risk of harm to the Dartmouth community.

21. Doe's advisor in connection with the case arising from Smith's allegations initially was Christine Brown, an attorney. Doe subsequently replaced Brown with the attorneys

who represent him in this litigation.

22.     During the initial investigation phase of this case, the investigator interviewed Smith and five other witnesses.  Doe refused to participate in the investigation during this time.

23.     Following the initial investigation, Smith and Doe were afforded an opportunity to review and respond to the evidence gathered during the investigation, but neither party responded.

24.     On April 26, 2023, Doe wrote to me and others, stating why he "declined to participate in this so-called investigation," including concerns about alleged bias on the part of me and the original investigator.

25.     Consistent with Dartmouth's policies, these allegations of bias were referred to Dartmouth's Chief Compliance Officer, Alejandro Diaz.   From that point on, I had no substantive involvement in Doe's case.

26.     Dartmouth engaged the firm Grand River Solutions ("GRS"), which specializes in this work.  A GRS employee was appointed to serve as the Title IX Coordinator for Doe's case; another GRS employee was appointed to serve as the investigator; and three other GRS employees were appointed as the Hearing Panel.

27.     Since 2018, Dartmouth has reached a final determination on 26 complaints of sexual assault by male students.  In 12 of those cases, the male respondent was found *not* responsible.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 22, 2024.

/s/ Kristi L. Clemens
Kristi L. Clemens

**Certificate of Service**

      I certify that on February 23, 2024, I caused the foregoing document to be served on counsel of record for all parties that have appeared to date through the Court's CM/ECF system.

                                         /s/ Elizabeth H. Kelly
                                         Elizabeth H. Kelly