# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| |
|---|
| JOHN DOE, |
|     Plaintiff |
|   v. |
| TRUSTEES OF DARTMOUTH COLLEGE, |
|     Defendant |

Civil Action No:  1:24-cv-46-JL

**DECLARATION OF ADAM WOLKOFF, J.D., PH.D.**

1.  I am Assistant Director of Resolution Services at Grand River Solutions.  I served as the Chair of the Hearing Panel in John Doe's sexual misconduct case at Dartmouth.  I have personal knowledge of the following.

2.  Prior to the hearing on December 8, 2023, the Hearing Panel reviewed all the investigation materials, including the final investigation report, the information in the appendix to that final investigation report, the statements and responses provided by the parties, and the notices of investigation provided by Dartmouth.

3.  Sally Smith and Doe both attended the hearing accompanied by their advisors.

4.  The Hearing Panel questioned both parties, taking into account the questions that both Smith and Doe suggested the Panel should ask, including questions that Doe submitted during the hearing.

5.  The Hearing Panel's Final Decision Regarding Responsibility summarizes relevant information that the parties provided, but it is not intended to be comprehensive of the entire record.  That is stated in footnote 1 of the Final Decision.

6.  Among many other issues, the Hearing Panel carefully assessed the plausibility of Smith's account in light of the SANE exam notes, which stated there were no "obvious" signs of trauma in the physical exam.  The Panel determined the evidence was largely consistent with

1

Smith's own statement (in her interview at page 24) that her body "reacted to what [Doe] was doing" during the assault and this caused her embarrassment because she had not consented to the penetration. The Panel felt it unnecessary to include further graphic details from the SANE examination in the Final Report.  In addition, Smith clarified at the hearing that although the last assault spanned an hour, and Doe was on top of her for that long, he was not penetrating her that entire time.

7.      The Hearing Panel understood that the relevant portions of the SANE exam medical records were provided in the appendix.  Doe did not raise in his response to the evidence that pages were missing from the report.  He also never posed any questions for the Panel to ask Smith about any missing pages of the SANE exam.

8.      Smith testified at the hearing that she took the SnapChat video during the last assault.  Her testimony and description of how she took the recording was found reliable.  She also explained at the hearing why the video in the record had a date of December 19, 2023— because that was likely the day she provided the video to Dartmouth.  Smith explained that she took a screenshot from her phone and that it showed that the recording was from Respondent's home at 5:50.  Smith offered the screenshot as evidence.  The Panel declined to accept the screenshot, because the investigation record had closed, but the Panel considered her testimony on the issue and found it reliable.

9.      The Panel also carefully considered the video in relation to the issue of lighting and found it plausible that the recording was dark, with only a single source of light showing, because the only strong light source came from the hallway through a slightly open door.  The Panel also considered that Smith was the only audible voice because Doe had become quiet by that part of the encounter.

10.     The Hearing Panel also considered whether Smith's statements were inconsistent. In assessing the consistency of Smith's accounts, the Panel found it significant that Smith described three instances of penetration to the SANE examiner within hours after the incident, and this account was consistent with her statements during the investigation and hearing in the Sexual Misconduct Policy proceeding.

11.     The Panel noted that some details about the sexual encounter were not included in the police report's version of Smith's account.  However, the Panel also observed that the police report's account of Doe's statement also appeared to lack some relevant details.   For example, the police report did not describe the officer telling Doe that Smith's husband was thinking of coming to hurt him, or telling Doe that the phone calls could have come from Smith's husband or been a random scam.  One of the panelists who served for nearly ten years as a campus police officer noted that the police report did not seem thorough and complete.

12.     The Hearing Panel also considered the inconsistencies in witness accounts of what they recalled Smith told them about the encounter.  The Hearing Panel asked Smith about these during the hearing, and she candidly explained how some of the witnesses' recollections were incorrect, and that she had "no control over anybody's memory."

13.     The Hearing Panel also considered the conflicting testimony about how Doe and Smith met on Bumble in "Date mode" versus "BFF mode."  Neither party submitted records from Bumble and the Panel was left with conflicting accounts that could not be reconciled.

14.     The Hearing Panel observed that Doe's account of the sexual encounter was generally consistent with his prior accounts, but also that Doe read from a prepared statement at the hearing.  The Panel also noted a glaring inconsistency in his story about deleting his texts and Bumble account.  He claimed he never deleted the messages after knowing that he was accused,

claiming he only knew he was accused when the police visited him in December.  However, the Panel noted at the end of the car ride with Smith on November 4, and in their text exchange on November 10, Smith accused Doe of nonconsensual conduct.  Doe's initial report to the investigator suggested he deleted his messages after the November 10 exchange, but in the hearing he claimed to have deleted them before any accusation.  This diminished the reliability of Doe's account as to what the alleged texts and Bumble accounts would say.

15.     While the Hearing panel gave less credit to Doe's statements about emails and records that he did not produce, the Panel's decision primarily was based on the corroborating evidence that Smith provided, including the SnapChat recording, her immediate reports of the incident to witnesses and the SANE exam nurse, her reporting to the police, and the fact that she raised the issue of consent with Doe twice after the encounter.  It was undisputed that Smith confronted Doe about some form of nonconsensual sexual contact at the end of their car ride back to her residence on November 4, although Doe stated he took her accusation (regarding a nonconsensual kiss) as a "joke."

16.     I am unavailable to testify at the hearing in this matter before the Court on February 27, 2024, because I am in transit, traveling home from vacation with my family, that day.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 22 day of February, 2024.

/s/ Adam Wolkoff_____
Adam Wolkoff, J.D., Ph.D

**Certificate of Service**

I certify that on February 23, 2024, I caused the foregoing document to be served on counsel of record for all parties that have appeared to date through the Court's CM/ECF system.

/s/ Elizabeth H. Kelly
Elizabeth H. Kelly

5