EXHIBIT

A

exhibitsticker.com

# DARTMOUTH

# Dartmouth College Policy on Sexual and Gender-Based Misconduct

## Additional Details ⌄

---

**POLICY ID**
046-0004

**EFFECTIVE DATE**
August 14, 2020

**LAST REVISED DATE**
February 21, 2022

**DIVISION**
Office of the President

**OFFICE OF PRIMARY RESPONSIBILITY**
Office of Equal Opportunity, Accessibility, and Title IX (EOATIX)
(https://eoatix.dartmouth.edu/)

## Summary of Policy

This policy states that Dartmouth does not discriminate on the basis of sex in its education programs or activities.

## Affected Parties

All Groups


Exhibit
1

D00000001

## Policy Statement

# DARTMOUTH COLLEGE SEXUAL AND GENDER-BASED MISCONDUCT POLICY

### I. STATEMENT OF NON-DISCRIMINATION

Dartmouth College ("Dartmouth"), inclusive of all its schools and faculties, does not discriminate on the basis of sex, race, color, religion, age, disability, status as a veteran, national or ethnic origin, sexual orientation, gender identity, gender expression, or any other category protected by applicable law, in the administration of its educational policies, admission policies, scholarship and loan programs, employment, or other school administered programs.[1]

This policy addresses discrimination on the basis of sex.  Dartmouth does not discriminate on the basis of sex in its education programs or activities, and Dartmouth is required by Title IX of the Education Amendments of 1972, and the final Title IX regulations issued by the U.S. Department of Education's Office for Civil Rights in May 2020, not to discriminate in such a manner.  The requirement not to discriminate on the basis of sex in the education program or activity extends to admission and employment.  Inquiries about the application of Title IX and its implementing regulations may be referred to the Title IX Coordinator, to the Assistant Secretary for Civil Rights, or both.

### II. STATEMENT OF PURPOSE

Dartmouth is committed to establishing and maintaining a safe learning, living, and working environment where healthy, respectful, and consensual conduct represents the campus cultural norm. To that end, Dartmouth prohibits the following types of conduct, collectively, "Prohibited Conduct":

- Sex and gender-based discrimination, sexual harassment (including sex/gender-based harassment), sexual assault, sexual exploitation, dating violence, domestic violence, provision of alcohol and/or other drugs for purposes of prohibited conduct, and stalking, as described below in Section VI;
- retaliation against an individual for the purpose of interfering with any right or privilege secured by Title IX or its regulations, or because the individual has made a report of Prohibited Conduct, filed a Formal Complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, hearing or resolution of an alleged violation of this policy, as described below in Section VI; and
- the exertion of power, supervision, or authority by one individual over another in relationships of a sexual or intimate nature, as described below in Section VIII.

Prohibited Conduct undermines the character and mission of Dartmouth and will not be tolerated.  Students, Faculty or Staff who engage in Prohibited Conduct may be subject to disciplinary action, including permanent separation from Dartmouth. In addition, Dartmouth will provide remedies to a Complainant to restore or preserve equal access to Dartmouth's education programs or activities where a determination of responsibility has been made against a Respondent.

Case 1:24-cv-00404-SM-TSM   Document 11-1   Filed 03/08/24   Page 4 of 26

It is the responsibility of every member of the Dartmouth community to foster an environment free from Prohibited Conduct. All members of the community are strongly encouraged to take reasonable and prudent actions to prevent or stop an act of Prohibited Conduct. This may include direct intervention when safe to do so, enlisting the assistance of others, contacting law enforcement, or seeking assistance from a person in authority. Community members who choose to exercise this positive responsibility will be supported by Dartmouth and protected from retaliation.

This policy complies with applicable legal requirements including Title IX of the Education Amendments of 1972 and its implementing regulations; the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act, as amended by the Violence Against Women Reauthorization Act of 2013; Title VII of the Civil Rights Act of 1964; and other applicable federal and New Hampshire state laws. It supersedes all previous statements of Dartmouth policy on sexual harassment, sexual assault, sexual misconduct, dating violence, domestic violence and stalking.[2] This policy shall become effective after approval by the Faculty of Dartmouth, consisting of the Faculty of Arts and Sciences, the Faculty of the Geisel School of Medicine, the Faculty of the Thayer School of Engineering, the Faculty of the Amos Tuck School of Business Administration; and the Board of Trustees of Dartmouth.

**SCOPE OF POLICY**

This policy applies broadly to the entire Dartmouth community, including undergraduate, graduate, and professional school students in Arts and Sciences, the Guarini School of Graduate and Advanced Studies, the Geisel School of Medicine, the Thayer School of Engineering, and the Tuck School of Business, and visiting students in any of these schools (collectively known together as "Students"); those employed by Dartmouth, including all faculty members, postdoctoral fellows, and all staff positions (including all exempt and non-exempt positions, bargaining unit positions, non-faculty academic positions (such as Research Associates, Research Fellows, and Research Scientists) and senior administrative and leadership positions), as well as those adjunct and visiting faculty, clinicians, and research or health scientists who are not employed by Dartmouth but have Dartmouth faculty, affiliate, postdoctoral, or house staff appointments for the purpose of teaching and/or research at Dartmouth, such as but not limited to the Geisel School of Medicine (together "Faculty and Staff" or "Employees")[3]; contractors, vendors, or other third parties contractually obligated to Dartmouth ("Third Parties"); and alumni, visitors, or guests of Dartmouth, including prospective Students or Employees ("Invitees"). These definitions are solely for the purpose of this policy and the processes for resolving reports under this policy, and do not apply to any other Dartmouth policy.

This policy pertains to acts of Prohibited Conduct committed by Students, Faculty and Staff, Third Parties, and Invitees that occur within Dartmouth's Education Program or Activity.  The term Education Program or Activity includes all of Dartmouth's operations, including locations, events, or circumstances over which Dartmouth exercised substantial control over both the Respondent and the context in which the conduct occurs; and any building owned or controlled by a student organization that is officially recognized by Dartmouth.  The Title IX regulations, which direct Dartmouth's response, do not draw a line between on campus, off campus, or online, provided the conduct occurred in an Education Program or Activity in the

D00000003

United States.  Examples include Dartmouth-sponsored, Dartmouth-funded or otherwise Dartmouth-supported study off campus, research, internship, mentorship, summer session, conferences, meetings, social events, or other affiliated programs or premises.

In keeping with Dartmouth's educational mission and commitment to foster a learning, living, and working environment free from discrimination and harassment, this policy also pertains to acts of Prohibited Conduct that may fall outside of the jurisdiction set forth in the May 2020 Title IX regulations, including additional forms of sexual and gender-based harassment, as well as conduct that occurs outside the United States, but still in an Education Program or Activity.  Conduct outside of the United States, may include, for example, Dartmouth-sponsored, Dartmouth-funded or otherwise Dartmouth-supported study abroad.  Under limited circumstances, this policy may also pertain to instances in which the conduct occurred outside of the Education Program or Activity.

To implement this policy, Dartmouth has developed processes to investigate or otherwise address reports of Prohibited Conduct under this policy. This policy and the corresponding processes comply with the final Title IX regulations issued by the U.S. Department of Education's Office for Civil Rights in May 2020, which require Dartmouth to respond promptly and reasonably when it has notice of potential sexual harassment in an Education Program or Activity committed against a person in the United States.

The resolution processes for students, staff and faculty, which address all forms of Prohibited Conduct, outline consistent processes for informal and formal resolution.   Throughout all processes, Dartmouth will treat Complainants and Respondents equitably by offering Supportive Measures to a Complainant when Dartmouth has notice of potential Prohibited Conduct, and by following a formal resolution process that fulfills the requirements for a grievance process under the Title IX regulations before the imposition of any disciplinary sanction against a Respondent.  Upon receipt of a report of Prohibited Conduct, the matter may be resolved through: provision of Supportive Measures only; pursuing the formal resolution process, which is initiated by the filing of a Formal Complaint, and involves an investigation, hearing, and appeal; or, pursing an informal resolution process, after the filing of a Formal Complaint, which requires the consent of the Complainant and the Respondent.  A Complainant is always entitled to reasonably available Supportive Measures, regardless of whether a formal or informal resolution process is initiated.  The determination as to whether to proceed with Supportive Measures only or an informal or formal resolution process occurs during the Initial Assessment phase of the resolution process.

The nature of the conduct alleged, and the geographic location in which it occurs, may impact the nature of the hearing used in the formal resolution process, as set forth in the relevant processes for resolving reports.  Where the reported conduct falls within the Title IX regulations, the hearing process includes cross-examination by the party's advisor.  Where the reported conduct falls outside of Title IX jurisdiction, the hearing process provides the parties with the opportunity to submit questions through the Hearing Coordinator and Chair of the Hearing Panel, and the Hearing Panel may consider any information provided in the final investigation report that the Hearing Panel finds reliable and credible.

D00000004

The individual reported to have experienced Prohibited Conduct will be referred to as the "Complainant." The individual who is reported to have violated the policy will be referred to as the "Respondent." There may be instances where another person, who has not experienced but is aware of the occurrence of Prohibited Conduct, may report conduct, and that person is referred to as the "Reporting Party." In those limited circumstances, Dartmouth will determine which of the policy provisions provided to the Complainant, if any, are also applicable to the Reporting Party.

Dartmouth will select the appropriate process to use in a given situation based on the nature of the conduct, the geographic location in which it occurs, and the role of the Respondent. Each process, however, incorporates important procedural protections and a robust investigation and hearing process that is designed to be fair, impartial, prompt and equitable. See Section X below for more information about the specific processes for investigation and resolution.

### III. TITLE IX COORDINATOR

Dartmouth's Title IX Coordinator (https://sexual-respect.dartmouth.edu/about/about-title-ix-office) is charged with coordinating Dartmouth's compliance with Title IX and this policy, with the assistance and support of Deputy Title IX Coordinators (https://sexual-respect.dartmouth.edu/about/about-title-ix-office). The Title IX Coordinator is responsible for overseeing and providing education and training; coordinating Dartmouth's investigation, response, and resolution of all reports of Prohibited Conduct under this policy; and tracking and reporting annually on all incidents in violation of this policy. The names and contact information of Dartmouth's current Title IX Coordinator and Deputy Title IX Coordinators are accessible via the hyperlinks above.

Concerns about Dartmouth's application of this policy may also be addressed to the Title IX Coordinator (mailto:titleix@dartmouth.edu), the Deputy Title IX Coordinators (mailto:titleix@dartmouth.edu), or the following:

**U.S. Department of Education, Office for Civil Rights**

8th Floor

5 Post Office Square

Boston, MA 02109-3921

Telephone: (617) 289-0111

Telephone: (800) 421-3481

Facsimile: (617) 289-0150

Email: OCR.Boston@ed.gov (mailto:OCR.Boston@ed.gov)

**United States Equal Employment Opportunity Commission**

D00000005

John F. Kennedy Federal Building

475 Government Center

Boston, MA 02203

Phone: 1-800-669-4000

Fax:    617-565-3196

TTY:   1-800-669-6820

ASL Video Phone:     844-234-5122

**New Hampshire Commission for Human Rights**

2 Industrial Park Drive, Bldg. One

Concord, NH 03301

Telephone: (603) 271-2767

Fax: (603) 271-6339

E-mail: humanrights@nh.gov (mailto:humanrights@nh.gov)

## IV. PRIVACY AND CONFIDENTIALITY

Dartmouth is committed to making reasonable efforts to protect the privacy interests of a Complainant, a Respondent and/or other individuals involved in a report under this policy.

**Privacy:** For the purposes of this policy, privacy generally means that information related to a report of Prohibited Conduct under Sections VII and IX of this policy will be shared with a limited number of individuals who "need to know" in order to ensure the prompt, equitable and impartial review, investigation, and resolution of the report.  In the event of a report indicating an imminent threat of harm to self or others, information should be promptly shared with the Department of Safety and Security and/or local law enforcement. All employees who are routinely involved in Dartmouth's Title IX response receive specific training and guidance about safeguarding private information in accordance with applicable laws.

**Confidentiality:** For the purposes of this policy, confidentiality means that campus or community professionals with the statutorily granted ability to maintain information as privileged cannot reveal identifiable information shared by an individual to any other person without express permission of the

individual, or as otherwise permitted or required by law. Those campus and community professionals who have the ability to maintain privileged communications and keep information confidential, referred to as Confidential Resources, include:

1. Health care providers (and those who assist in the provision of confidential services) in Dartmouth College Health Services (https://students.dartmouth.edu/health-service/primary-care/inpatient-care);

2. Mental health professionals (and those who assist in the provision of confidential services) in the Dartmouth College Counseling Center (https://students.dartmouth.edu/health-service/counseling/about) (Health Services and the Counseling Center are collectively referred to as "Dick's House" throughout this document), in the Faculty/Employment Assistance Program, and in any programs that contract with Dartmouth to provide mental health professional services; and

3. Ordained clergy (https://students.dartmouth.edu/tucker/about/pastoral-counseling), all of whom normally have privileged confidentiality that is recognized by New Hampshire state law.

These individuals are required to maintain confidentiality when they receive information in any of the above capacities, unless (i) given permission to do so by the person who disclosed the information; (ii) there is an imminent threat of harm to self or others; (iii) the conduct involves suspected abuse of a minor under the age of 18; or (iv) as otherwise required or permitted by law or court order.

The Dartmouth College Ombudsperson is also considered a Confidential Resource, but certain exceptions apply to the role. Specifically:

- sharing information with the Ombudsperson does not constitute legal notice to Dartmouth and does not constitute a complaint under any of Dartmouth's policies;
- the Ombudsperson is independent of the rest of Dartmouth's organizational structure; and
- the Ombudsperson does not have the statutorily granted ability to maintain information as privileged, so communications with the Ombudsperson are subject to disclosure in legal proceedings.

**Clery Act Reporting:** Pursuant to the Clery Act, Dartmouth includes statistics about Clery Act crimes in its daily crime log and Annual Security Report and provides those statistics to the United States Department of Education; in all these instances, the information is reported in a manner that does not include personally identifying information about persons involved in an incident. Dartmouth also reports aggregate numbers of incidents (with no detail or personally identifying information) disclosed to Confidential Resources. Dartmouth will also issue a timely warning to the community for reports of Clery-defined conduct that may constitute a serious and ongoing threat, as outlined in the Annual Security Report.

## V. EMPLOYEE RESPONSIBILITY TO REPORT ALLEGATIONS

Dartmouth is required to take responsive action when it has notice of potential Prohibited Conduct. Notice occurs when the Title IX Coordinator receives a report, from a Complainant, or any other person, alleging Prohibited Conduct as defined under this policy. To this end, Dartmouth has instituted policies and training requiring Responsible Employees (employees in a leadership or supervisory position or who have significant

responsibility for the welfare of Students, Faculty or Staff, as described below) to share any information about potential Prohibited Conduct with the Title IX Coordinator. This centralized reporting requirement increases the likelihood that a Complainant will receive access to Supportive Measures, ensures that all Dartmouth community members have equitable access to the resolution processes, and allows Dartmouth to take appropriate action consistent with its Title IX obligations and educational mission while still respecting Complainants' agency and autonomy.

There are (3) general categories of Dartmouth employees and the respective ability of each category of individuals to maintain confidentiality differs as follows:

**A. Confidential Resources:** (individuals listed in Section IV who have the ability to maintain legally protected confidentiality). Confidential Resources can maintain an individual's confidentiality, including disclosures by a Complainant, Reporting Party or Respondent, and will not share any information with Dartmouth, subject to the exceptions listed above.

**B. Responsible Employees**:  As contrasted with the Complainant's personal decision whether to make a report of Prohibited Conduct, once information is disclosed to a Responsible Employee, the Responsible Employee is required to immediately convey all known details of incidents of Prohibited Conduct involving Students, Faculty and Staff, Third Parties and Invitees to the Title IX Coordinator. **"Responsible Employees"** include employees in a leadership or supervisory position, or who have significant responsibility for the welfare of Students, Faculty or Staff. A supervisor is anyone who has the authority to hire, promote, discipline, evaluate, grade, or direct Students, Faculty or Staff. Responsible Employees include, but are not limited to: the Title IX Coordinator; the President, Vice Presidents and Deans; the Provost; members of the President's Senior Leadership Group; Deputy Title IX Coordinators; Department of Safety and Security Officers; Human Resources Consultants; faculty department chairs; all teaching faculty; teaching assistants; undergraduate advisors; coaches; and anyone who leads, administers, advises, or directs Dartmouth programs or departments. Students serving in certain positions of leadership or authority, and/or Student employees with significant responsibility for the welfare of other Students, Faculty or Staff are also considered Responsible Employees and receive appropriate training within the context of their specific programs. This list is not exhaustive; any questions about the status of an employee as a Responsible Employee should be addressed to the Title IX Coordinator (mailto:titleix@dartmouth.edu) and/or a Deputy Title IX Coordinator. (mailto:titleix@dartmouth.edu)

**C.** All other **Employees** are strongly encouraged to share information with the Title IX Coordinator about any Prohibited Conduct.

**Public Awareness Events:**  Public awareness events such as "Take Back the Night," "Many Voices," protests, or other forums in which community members disclose experiences with sexual harassment, sexual assault, sexual exploitation, and/or dating and domestic violence, are not considered to be reportable events or notice to Dartmouth of  Prohibited Conduct and will not trigger Dartmouth's obligation to investigate or take action with respect to such information. However, such events will inform education and prevention efforts, and Dartmouth will continue to provide information about Title IX, support, resources, and options for resolution to attendees at these events.

D00000008

## VI. PROHIBITED CONDUCT UNDER THIS POLICY

Conduct under this policy is prohibited regardless of the sexual orientation, gender, gender identity, or gender expression of the Complainant or Respondent.  Prohibited Conduct includes:

**A. Sex/gender-based discrimination:** Sex/gender-based discrimination is subjecting an individual to adverse action—including unfavorable or unfair treatment—based on or because of their sex, sexual orientation, gender (including gender identity and gender expression), or the individual's perceived sex, sexual orientation, or gender (including gender identity and gender expression). Sex/gender-based discrimination can occur in either an employment or an educational context.

Examples of conduct that can constitute sex/gender-based discrimination include:

- Refusing professional or learning opportunities to an individual because of their sex/gender;
- Singling out or targeting an individual for different or less favorable treatment (e.g., more severe discipline, lower salary increase) because of their sex/gender;
- Failing or refusing to hire or admit an individual because of their sex/gender; and
- Terminating an individual from employment or an educational program based on their sex/gender.

**B. Sexual Harassment:**  Sexual Harassment includes two distinct, but overlapping definitions.  As described in the accompanying processes, the specific form of Sexual Harassment may impact the nature of the hearing used in the formal resolution process.

1. The Title IX regulations define Sexual Harassment as conduct on the basis of sex that must satisfy one or more of the following:

    a) A Dartmouth employee conditions the provision of an aid, benefit, or service of Dartmouth on an individual's participating in unwelcome sexual conduct; or

    b) Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to Dartmouth's education program or activity;

    c) Sexual Assault, Dating Violence, Domestic Violence, Stalking, and Retaliation, as defined below.

2. In addition, consistent with Title VII of the Civil Rights Act of 1964 and the recognition that Sexual Harassment may also occur in a wider variety of contexts, Dartmouth also defines Sexual Harassment to include (1) any unwelcome sexual advance, request for sexual favors, or other unwanted conduct of a sexual nature, whether verbal, non-verbal, graphic, physical, electronic, or otherwise (sexual harassment); and (2) unwelcome conduct, whether verbal, nonverbal, graphic, physical, or otherwise, based on sex or gender, sexual orientation, gender identity, or gender expression, even if the acts do not involve conduct of a sexual nature (sex/gender-based harassment) when one or more of the following conditions are present:

a) Submission to or rejection of such conduct is either an explicit or implicit term or condition of, or is used as the basis for decisions affecting, an individual's employment or advancement in employment, evaluation of academic work or advancement in an academic program, or basis for participation in any aspect of a Dartmouth program or activity (*quid pro quo*); or

b) The conduct is sufficiently severe, pervasive, and/or persist so as to unreasonably interfere with, limit, or alter the conditions of education, employment, or participation in a Dartmouth program or activity (i.e., Dartmouth's learning, working, or living programs), or by creating an environment that a reasonable person in similar circumstances would find intimidating, hostile, abusive, or offensive (hostile environment). Whether a hostile environment exists will be assessed under both an objective and subjective standard.

In evaluating whether a *hostile environment* exists, Dartmouth will evaluate the totality of known circumstances, including, but not limited to:

a) the frequency, nature and severity of the conduct (note that an isolated incident, unless sufficiently severe would not create a hostile environment);

b) whether the conduct was physically threatening;

c) the effect of the conduct on the Complainant's mental or emotional state;

d) whether the conduct was directed at more than one person;

e) whether the conduct arose in the context of other discriminatory conduct;

f) whether the conduct unreasonably interfered with the Complainant's educational or work performance and/or Dartmouth programs or activities;

g) whether the conduct implicates academic freedom or protected speech; and,

h) whether the behavior is appropriate to the carrying out of certain instructional, advisory, and supervisory responsibilities; and,

i) other relevant factors that may arise from consideration of the reported facts and circumstances.

**C. Sexual Assault:** Sexual assault is having or attempting to have sexual contact with another individual without consent or where the individual cannot consent because of age or temporary or permanent mental incapacity (*see VII below for definition of consent and incapacitation*).[4]

Sexual contact includes:

1. Sexual intercourse (anal, oral, or vaginal), including penetration with a body part (*e.g.*, penis, finger, hand, or tongue) or an object, or requiring another to penetrate themselves with a body part or an object, however slight; or

D00000010

2. Sexual touching of the private body parts, including, but not limited to, contact with the breasts, buttocks, groin, genitals, or other intimate part of an individual's body for the purpose of sexual gratification.

3. Attempts to commit sexual assault.

**D. Sexual Exploitation:** Sexual Exploitation is intentionally taking sexual advantage of another person without consent. It may involve use of one's own or another individual's nudity or sexuality. Examples of Sexual Exploitation include, but are not limited to:

1. voyeurism (such as watching or taking pictures, videos, or audio recordings of another person in a state of undress without their consent or of another person engaging in a sexual act without the consent of all parties);
2. disseminating, streaming, or posting images, pictures or video of another in a state of undress or of a sexual nature without the person's consent;
3. knowingly exposing one's genitals to another person without consent;
4. prostituting another individual; or
5. knowingly exposing another individual to a sexually transmitted infection or virus without the other individual's knowledge and consent.

**E. Dating and Domestic Violence:** Dating and Domestic Violence includes any act of violence against a Complainant who is or has been involved in a sexual, dating, domestic, or other intimate relationship with the Respondent, or against a person with whom the Respondent has sought to have such a relationship, as follows:

i. Domestic Violence: includes any act of violence committed by a current or former spouse or intimate partner of the Complainant, by a person with whom the Complainant shares a child in common, by a person who is cohabitating with, or has cohabitated with, the Complainant as a spouse or intimate partner, by a person similarly situated to a spouse of the Complainant under New Hampshire state law, or by any other person against an adult or minor Complainant who is protected from that person's acts under New Hampshire state law;

ii. Dating Violence: includes any act of violence committed by a person:

a) who is or has been in a social relationship of a romantic or intimate nature with the Complainant; and

b) where the existence of such a relationship shall be determined based on a consideration of the following factors:

i) The length of the relationship;

ii) The type of relationship; and

iii) The frequency of interaction between the persons involved in the relationship.

D00000011

Dating or Domestic Violence may also include forms of Prohibited Conduct under this policy, including Sexual Assault, Sexual Exploitation, and Stalking.

**F. Stalking:** Stalking occurs when a person engages in a course of conduct directed at a specific person under circumstances that would cause a reasonable person to fear for their own safety or the safety of others or suffer substantial emotional distress.

Course of conduct means two or more instances including but not limited to unwelcome acts in which an individual directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property. Substantial emotional distress means significant mental suffering or anguish.

Stalking includes the concept of cyber-stalking, a particular form of stalking in which electronic media such as the internet, social networks, blogs, cell phones, texts, or other similar devices or forms of contact are used.

**G. Provision of Alcohol and/or Other Drugs for Purposes of Prohibited Conduct:** The provision of alcohol and/or other drugs to an individual for the purpose of committing or facilitating Prohibited Conduct under this policy is also in and of itself a form of Prohibited Conduct. Such behavior may include provision of a drink or food which contains alcohol and/or other drugs without the knowledge of the individual to whom it is being provided or other actions taken with the intention of impairing the senses, judgment, and/or physical and mental ability of another person in order to engage in other forms of Prohibited Conduct. An individual does not have to engage in sexual activity with another person to be found responsible for the prohibited provision of alcohol and/or other drugs.

**H. Retaliation:** Retaliation means any adverse action, intimidation, threat, coercion or discrimination against an individual for the purpose of interfering with any right or privilege secured by Title IX or its regulations, or because the individual has made a report or Formal Complaint of Prohibited Conduct, testified, assisted, or participated or refused to participate in any manner in any investigation, proceeding or hearing under this policy. Retaliation includes such conduct through associates or agents of a Complainant, Respondent, Reporting Party, or participant in any investigation or proceeding related to this policy.

## VII. RELATED DEFINITIONS: CONSENT, COERCION OR FORCE, AND INCAPACITATION

**A. Consent:** Consent is an affirmative and willing agreement to engage in specific forms of sexual contact with another person. Consent requires an outward demonstration, through mutually understandable words or actions, indicating that an individual has freely chosen to engage in sexual contact. Consent cannot be obtained through:

1. The use of coercion or force; or

2. By taking advantage of the incapacitation of another individual.

Silence, passivity, or the absence of resistance does not imply consent. It is important not to make assumptions; if confusion or ambiguity arises during a sexual interaction, it is essential that each participant stop and clarify the other's willingness to continue.

Consent can be withdrawn at any time. When consent is withdrawn and outwardly communicated as such, sexual activity must cease. Prior consent does not imply current or future consent; even in the context of an ongoing relationship, consent must be sought and freely given for each instance of sexual contact.

An essential element of consent is that it be freely given. Freely given consent might not be present, or may not even be possible, in relationships of a sexual or intimate nature between individuals where one individual has power, supervision or authority over another. More information, policy and guidance regarding such relationships can be found in VIII below.

In evaluating whether consent was given, consideration will be given to the totality of the facts and circumstances, including but not limited to the extent to which a Complainant affirmatively uses words or actions indicating a willingness to engage in sexual contact, free from intimidation, fear, or coercion; whether a reasonable person in the Respondent's position would have understood such person's words and acts as an expression of consent; and whether there are any circumstances, known or reasonably apparent to the Respondent, demonstrating incapacitation or lack of consent.

**B. Coercion or Force:** Coercion is verbal and/or physical conduct, including manipulation, intimidation, unwanted contact, and express or implied threats of physical, emotional, or other harm, that would reasonably place an individual in fear of immediate or future harm and that is employed to compel someone to engage in sexual contact.

Force is the use or threat of physical violence or intimidation to overcome an individual's freedom of will, to choose whether or not to participate in sexual contact.

**C. Incapacitation:** An individual who is incapacitated lacks the ability to make informed judgments and cannot consent to sexual contact. Incapacitation is the inability, temporarily or permanently, to give consent because an individual is mentally and/or physically helpless, asleep, unconscious, or unaware that sexual activity is occurring. Mentally helpless means a person is rendered temporarily incapable of appraising or controlling one's own conduct. Physically helpless means a person is physically unable to verbally or otherwise communicate consent or unwillingness to an act.

Where alcohol or other drugs are involved, incapacitation is a state beyond impairment or intoxication. Where alcohol or other drugs are involved, evaluating incapacitation requires an assessment of how the consumption of alcohol and/or drugs affects a person's decision-making ability; awareness of consequences; ability to make informed, rational judgments; capacity to appreciate the nature and quality of the act; or level of consciousness. The assessment is based on objectively and reasonably apparent indications of incapacitation when viewed from the perspective of a sober, reasonable person.

**VIII. SEXUAL OR INTIMATE RELATIONSHIPS BETWEEN INDIVIDUALS IN UNEQUAL POSITIONS**

D00000013

Overview and Statements of Principle

Relationships of a sexual or intimate nature in which one individual has power, supervision or authority over another at the point such a relationship begins or thereafter pose significant risks to the atmosphere of trust integral to the educational and work environment because, to varying degrees, they may undermine the assurance of freely given consent. For the purpose of this policy, these relationships fall into three categories, depending on the nature of the power, supervision, or authority. Dartmouth therefore adopts the principle that no Dartmouth community member should have a role of power, supervision, or authority over any individual with whom they have or have had a relationship of a sexual or intimate nature. The definition of each category and the accompanying requirements for the individual with greater power, supervision, or authority are described below in A, B, and C.

Taking advantage of one's power, supervision or authority over another is unacceptable and may create a hostile environment for the individuals involved and the community at large that seriously undermines the atmosphere of trust essential to the academic enterprise. Inappropriate personal attention by an individual who is in a position to exercise professional power over another individual could include – but is not limited to – an instructor who determines a student's grade or who can otherwise affect the student's academic performance or professional future, including a postdoctoral position or residency placement; a tenured professor whose evaluation of a junior colleague can affect the latter's professional life; a coach who can affect the participation of a student-athlete; a faculty or staff supervisor who assigns work and makes other decisions affecting a staff member's duties or other conditions of employment; or an investigator who can determine the effort committed or salary received for grant-funded activities.

Sexual or intimate relationships that might be appropriate in other circumstances have inherent dangers when they occur between a Dartmouth community member and a person for whom the community member has a professional responsibility (*e.g.*, as instructor, advisor, evaluator, supervisor, coach, mentor). Implicit in the idea of professionalism is the recognition by those in positions of authority that in their relationships with students, faculty or staff there is an element of power. Thus, for the purpose of this policy, "power" is limited to such distinctions in professional responsibility and does not include purely social distinctions or differences in students' class year. It is incumbent upon those with authority not to abuse, nor to seem to abuse, the power with which they are entrusted.

As defined in Section VII, an essential element of consent to sexual contact is that it be freely given. Because freely given consent might not be present, or may not even be possible, in relationships of a sexual or intimate nature between individuals where one individual has power, supervision or authority over another, an abuse of power shall be presumed whenever an individual proposes, requests, or accepts sexual favors from, or engages in a sexual or intimate relationship with anyone over whom that individual holds power, supervision, or authority. As described further below in A, that presumption cannot be overridden in cases in which the nature of the power differential precludes the individual with greater authority from relinquishing that role. In comparison, B and C outline situations in which the conduct in question is not prohibited outright, because the presumption of abuse of power can be overridden – if the individual with greater authority complies with the stated requirements – that is, for disclosure and potential use of a management plan – or relinquishes the role that has created the power differential. B and C also apply to existing

D00000014

consensual sexual or intimate relationships between individuals of unequal power that predate the power differential or the adoption of this policy, which are subject to those requirements of disclosure and a potential management plan going forward.

All Dartmouth community members have the same protections and responsibilities relating to sexual or intimate relationships between individuals of unequal power. Any member of the Dartmouth community with questions, concerns or doubts about the appropriateness of an actual, anticipated or suspected relationship should consult with the appropriate Dean, Deputy Title IX Coordinator, and/or the Title IX Coordinator.  All Dartmouth community members should also be mindful that a change in position or role at Dartmouth that results in a change in power, supervision, or authority may either implicate one or more of the categories below or may cause a relationship to move from one category to another, thereby implicating requirements applying to that new category.

**A. Prohibited Interactions:**

(i)  No Faculty, Staff or non-Student Employee (as defined in Section I) shall propose, request, or accept sexual favors from or engage in a romantic, sexual or intimate relationship with any Dartmouth undergraduate student. Such conduct creates a presumptive abuse of power that cannot be overridden and is therefore prohibited outright.

(ii)  No Faculty; graduate, professional school or medical student; medical resident or fellow; postdoctoral fellow, scholar, or research associate; research scientist, distinguished fellow; teaching or research assistant or fellow; or proctor, mentor, or undergraduate teaching assistant shall propose, request, or accept sexual favors from or engage in a romantic, sexual or intimate relationship with any undergraduate, graduate, professional school or medical student who is enrolled in a course or section taught by that individual or otherwise subject to that individual's academic supervision. Academic supervision includes teaching, formal advising, supervising research, serving on a dissertation or other academic committee, mentoring, coaching, overseeing and/or having influence upon funding and/or academic progress, serving as a teaching assistant or grader,[5] and/or otherwise occupying a position of influence or power over a student's academic program.

Where a student's academic program requires a course that is taught only by the student's spouse or significant other or in which the only teaching assistant is the student's spouse or significant other, the appropriate Dean may, in their discretion, allow the student to take the course, so long as the conflict has been disclosed and arrangements have been made for a person apart from the instructor or teaching assistant who is the student's spouse or significant other to evaluate and grade the student's work, provided such arrangements are feasible for the course involved.

No Faculty, Staff or Employee (as defined in Section I) shall propose, request, or accept sexual favors from or engage in a romantic, sexual or intimate relationship with any Faculty, Staff or Employee subject to that individual's supervision.

**B. Requirements for Relationships Between Individuals of Different Dartmouth Status:** While not prohibited outright as an abuse of power, amorous relationships between individuals of different Dartmouth status that occur outside the direct instructional, supervisory, or evaluative context can also lead to

D00000015

difficulties. In a personal relationship where no current professional responsibility exists, the individuals involved should be sensitive to the possibility that they may unexpectedly be placed in a position of responsibility for that individual's instruction, supervision or evaluation. This could involve being called upon to write a letter of recommendation or to serve on a promotion, disciplinary, or selection committee involving the individual.

Although graduate, professional school or medical students; medical residents or fellows; postdoctoral fellows, scholars, or research associates; research scientists; distinguished fellows; teaching or research assistants or fellows; or proctors, mentors, or undergraduate teaching assistants may be less accustomed to think of themselves as being in a position of greater authority by virtue of their professional responsibilities, they should recognize that they might be viewed as more powerful than they perceive themselves to be. To the extent these individuals are in leadership or supervisory positions, they should be aware of the dynamics and risks of relationships with a power differential. Relationships between individuals in the same academic department or program are particularly prone to such risks. Individuals with questions or concerns about the appropriate nature of an actual, anticipated or suspected relationship should consult with the appropriate Dean, Deputy Title IX Coordinator, and/or the Title IX Coordinator.

Even when both parties have consented at the outset to the development of such a relationship, it is the person in the position of greater authority who, by virtue of their special responsibility and educational mission, will be held accountable for the relationship. Accordingly, the person in the position of greater authority must notify their academic supervisor(s) and/or Human Resources to evaluate the situation and to determine whether disclosure and development of a management plan is required. Such a management plan would normally include, but is not limited to, recusal in all situations indefinitely thereafter, in which the person in the position of greater authority would otherwise participate in or make a decision concerning the other person's employment or education.

**C. Requirements for Other Relationships Between Faculty, Staff and Other Employees in Unequal Positions of Authority:** As in B, consensual relationships between Faculty, Staff and Employees who occupy inherently unequal positions of authority are not prohibited outright as a presumed abuse of power. However, it is important that the person in the position of greater authority does not exercise any supervisory or evaluative function over the other person in the relationship at the point at which it begins and indefinitely thereafter. Accordingly, the person in the position of greater authority should notify their supervisor(s) and/or Human Resources to evaluate the situation and to determine whether disclosure and development of a management plan is required. If such a management plan is required, the plan would normally include, but is not limited to, recusal in all situations indefinitely thereafter in which the person in the position of greater authority would otherwise participate in or make a decision concerning the other person's employment or education.

## IX. RESOURCES AND REPORTING OPTIONS

Dartmouth offers trained professional resources for Students, Faculty and Staff, whether as Complainants, Reporting Parties, or Respondents, to provide support and guidance throughout the initiation, investigation, and resolution of a report of Prohibited Conduct. For comprehensive information on Supportive Measures,

including emergency assistance; hospitals; on-campus, community, and available support with academics, housing, and work, please refer to the Title IX Office website (https://sexual-respect.dartmouth.edu/reporting-support/title-ix-resources).

Any individual who is uncertain what they wish to do in response to an alleged incident of Prohibited Conduct, including how or whether to report the conduct, may contact and consult a Confidential Resource to address questions and concerns in a confidential setting. Individuals with questions or concerns about Dartmouth's processes may also contact the Title IX Coordinator (https://sexual-respect.dartmouth.edu/about/about-title-ix-office) directly as part of reporting the conduct to Dartmouth. Any individual may make a report of Prohibited Conduct under this policy regardless of affiliation with Dartmouth and regardless of whether or not the person reporting is the person alleged to be the victim of conduct.  Reports can be made in person, by mail, by telephone, or by electronic mail, using the contact information listed for the Title IX Coordinator, or by any other means that results in the Title IX Coordinator receiving the person's verbal or written report.  A report may be made at any time (including during non-business hours) by using the telephone number or electronic mail address, or by mail to the office address, listed for the Title IX Coordinator.

Dartmouth recognizes that deciding whether to make a report of Prohibited Conduct is a personal decision. The following principles and values will guide Dartmouth as facts and circumstances permit:

1. When Dartmouth has notice of potential Prohibited Conduct, Dartmouth will offer Supportive Measures to a Complainant, inform the Complainant of the availability of Supportive Measures with or without the filing of a Formal Complaint, and explain to the Complainant the process for filing a Formal Complaint.

2. Dartmouth will consider the Complainant's wishes with respect to Supportive Measures and seek to respect a Complainant's autonomy in making the determination regarding how to proceed.

3. In limited circumstances, typically where a risk of imminent harm to an individual or others or a threat to the physical health and safety of the campus or any Dartmouth Education Program or Activity is determined to exist, Dartmouth may be required to take immediate action upon receipt of a report of Prohibited Conduct. In such circumstances, the reasons and steps Dartmouth will take will be explained to the Complainant and, as appropriate, the Reporting Party.

4. Dartmouth is committed to educating and informing individual(s) regarding the choices and options available to them, including resources and processes inside and outside Dartmouth.

5. Dartmouth is committed to protecting all participants in any investigation or proceeding related to this policy from retaliation.

6. An individual may choose to seek assistance, support or guidance from a Confidential Resource on campus or in the community. A disclosure to a Confidential Resource does not constitute a report to Dartmouth.

D00000017

7. An individual may choose to make a report: (1) to Dartmouth, via the Title IX Office and/or (2) to external law enforcement. The most efficient and effective way to learn about Dartmouth resources and procedural options, access Supportive Measures, or to file a Formal Complaint is by directly contacting the Title IX Coordinator (https://sexual-respect.dartmouth.edu/about/about-title-ix-office).

**A. Resources:** The following resources are available at Dartmouth to individuals wishing to seek information and support, make a report and/or file a Complaint:

1. Confidential Resources (https://sexual-respect.dartmouth.edu/reporting-support/title-ix-resources) – As outlined in Section V, Confidential Resources are prohibited from breaking confidentiality unless (i) given permission to do so by the person who disclosed the information; (ii) there is an imminent threat of harm to self or others; (iii) the conduct involves suspected abuse of a minor under the age of 18; or (iv) as otherwise required or permitted by law or court order.

2. Designated Reporting Options - Making a report <u>does not</u> require an individual to decide whether to request a specific course of action. Deciding how to proceed can be a process that unfolds over time with support and assistance. The following are resources that an individual can use to report conduct that could be a violation of the Policy and to access reasonably available Supportive Measures.  Likewise, the persons listed below are familiar with the Policy and may be contacted to address questions or concerns about the Policy.

- Title IX Coordinator (https://sexual-respect.dartmouth.edu/about/about-title-ix-office)
- Deputy Title IX Coordinators (https://sexual-respect.dartmouth.edu/about/about-title-ix-office)
- Deputy Title IX Coordinators for Faculty, Staff, Undergraduate, Graduate, and Professional School Students (https://sexual-respect.dartmouth.edu/reporting-support/title-ix-resources)
- Dean of the College (https://student-affairs.dartmouth.edu/about/dean-college)
- Human Resources (https://www.dartmouth.edu/~hrs/)
- Department of Safety and Security (https://www.dartmouth.edu/~security/)

3. Local Law Enforcement - Dartmouth also strongly encourages anyone who becomes aware of an incident of Prohibited Conduct which may constitute a violation of law to report the incident to local law enforcement and will provide support, resources and assistance to those who do so. **If off campus, call 911 to reach local law enforcement, or contact:**

**Hanover Police Department**

(603) 643-2222 (non-emergency number)

The local police department where the conduct occurred.

All Confidential Resources and Designated Reporting Options are able to provide or direct community members to this support option.

4. Anonymous Report – Anyone can make an anonymous report through the Dartmouth Compliance and Ethics Hotline (https://secure.ethicspoint.com/domain/media/en/gui/35378/index.html), Dartmouth's telephone and web-based confidential reporting tool. The Hotline allows the reporter to report concerns and communicate with Dartmouth administrators while maintaining anonymity. Depending on the nature of the information provided, Dartmouth's ability to respond may be limited. Additional information about anonymous reporting is located here (https://www.dartmouth.edu/~rmi/hotlinefaqs2018.pdf).

**Telephone:** (888)-497-0516

**Online:** Dartmouth Compliance and Ethics Hotline (https://secure.ethicspoint.com/domain/en/report_company.asp?clientid=35378&override=yes&agreement=no)

**B. Time Frame for Reporting:** There is no time limit on reporting violations of this policy, although Dartmouth's ability to respond fully may become more limited with the passage of time.

If the Respondent is no longer affiliated with Dartmouth (*e.g.*, a report is made after a student has left or graduated or an employee no longer works for Dartmouth), Dartmouth will still provide reasonably available Supportive Measures to the Complainant, assist the Complainant in identifying external reporting options, and may take other appropriate action to address the reported conduct.

**C. Immunity from Disciplinary Action for Personal Ingestion of Alcohol or Other Drugs:** Dartmouth generally will grant immunity from disciplinary action to a reporting Student, whether as a Complainant or a Reporting Party, for the personal ingestion of alcohol or other drugs in violation of Dartmouth's Standards of Conduct that is part of a report of Prohibited Conduct. Students should be aware that any such grant of immunity from disciplinary action by Dartmouth has no effect on actions by law enforcement agencies. Dartmouth will not initiate conduct charges against a Complainant or Respondent arising from the same set of facts or circumstances for the purpose of interfering with any right or privilege secured by Title IX or the Title IX regulations.

**D. Initial Assessment Upon Receipt of a Report:** Consistent with the processes that accompany this policy, upon receipt of a report, Dartmouth will provide outreach to a Complainant, offer Supportive Measures and conduct an Initial Assessment of the reported information. The goal of the Initial Assessment is to provide a consistent, integrated and coordinated response to all reports and to ensure that all Dartmouth community members have access to information about Dartmouth resources, policies and procedural options for resolving the report. The Initial Assessment seeks to gather information only to determine whether this policy applies to the report and, if so, what form of resolution is reasonably available and appropriate.  The Initial Assessment in no way represents a finding of fact or responsibility. The Initial Assessment will also include a determination whether a timely warning pursuant to the Clery Act is necessary to protect the safety of the Complainant, any other individuals, or the campus community.

**E. Supportive Measures:** Dartmouth will take and/or make available reasonable and appropriate Supportive Measures designed to restore or preserve access to educational and employment opportunities without unreasonably burdening either party; address safety concerns of the Complainant, the Reporting Party, the

D00000019

Respondent or broader Dartmouth community; maintain the integrity of the investigative and/or resolution process; and deter retaliation. Supportive Measures are available whether or not a Formal Complaint is filed and regardless of whether the Complainant or Title IX Coordinator file a Formal Complaint. Supportive Measures are non-disciplinary, non-punitive individualized measures offered as appropriate, as reasonably available and without fee or charge to the Complainant or Respondent.

Supportive Measures may include:

- Facilitating access to counseling and medical services;
- Guidance in obtaining a sexual assault forensic examination;
- Assistance in arranging rescheduling of exams and assignments and extensions of deadlines;
- Academic supports;
- Assistance in requesting accommodations through the appropriate office if the Complainant or Respondent qualifies as an individual with a disability;
- Changes in the Complainant's or Respondent's class schedule (including the ability to transfer course sections or withdraw from a course), work schedule, or job assignment, including teaching, research, and service responsibilities;
- Change in the Complainant's or Respondent's campus housing;
- Escort and other safety planning steps;
- Imposition of a "no contact order," an administrative remedy designed to curtail contact and communications between two or more individuals;
- Voluntary leave of absence;
- Referral to resources to assist in obtaining a protective order;
- Referral to resources to assist with any financial aid, visa, or immigration concerns; or
- Any other Supportive Measure that does not unreasonably interfere with either party's access to education or employment opportunities can be used to achieve the goals of this policy.

In addition, other forms of Supportive Measures may involve more restrictive actions. Such Supportive Measures, listed below, are typically only available when Dartmouth has an articulable factual foundation that would support the taking of a restrictive measure against a Respondent prior to the conclusion of the investigation or in lieu of an investigation. More restrictive Supportive Measures, to the extent they are non-punitive, non-disciplinary and can be imposed without unreasonably burdening the Respondent, include:

- Emergency removal of a Student Respondent
- Paid or unpaid administrative leave for the Employee Respondent;
- Withdrawal from sponsored research projects;
- Change in the Respondent's campus housing;
- Exclusion from all or part of campus housing;
- Exclusion from specified activities or areas of campus;

D00000020

- Prohibition from participating in student activities or representing Dartmouth in any capacity such as playing on an official team; serving in student government; performing in an official band, ensemble, or production; participating in a recognized student organization; participating in Greek life activities; or participating in academic honor ceremonies; or
- Any other restrictive measure that can be used to achieve the goals of this policy.

The decision-making process for administrative leave of an Employee Respondent or emergency removal of a Student Respondent is detailed in the respective processes for resolving reports against Students, Staff or Faculty linked below.

Dartmouth will consider a number of factors in determining which Supportive Measures to take, including the needs of the Student or Employee seeking Supportive Measures; the severity or pervasiveness of the alleged conduct; any continuing effects on the Complainant; whether the Complainant and the Respondent share the same residence hall, academic course(s), or job location(s); and whether judicial measures have been taken to protect the Complainant (e.g., protective orders). Dartmouth will work in good faith to implement the requirements of judicially issued protective orders and similar orders, to the extent that doing so is within its authority.

The Title IX Coordinator is responsible for ensuring the implementation of Supportive Measures and coordinating Dartmouth's response with the appropriate offices on campus. Dartmouth will maintain the privacy of any Supportive Measures provided under this Policy to the extent practicable and will promptly address any violation of the protective measures.

Dartmouth will also provide reasonably available Supportive Measures for Invitees or Third Parties, provided that the Supportive Measures are within the scope of that individual's relationship to Dartmouth.

## X. APPLICABLE PROCEDURES UNDER THIS POLICY

In response to a report of Prohibited Conduct, the report may be resolved by:

1) the imposition of Supportive Measures only;

2) the filing of a Formal Complaint by the Complainant;

3) the filing of a Formal Complaint by the Title IX Coordinator; or,

4) an informal resolution voluntarily and mutually reached after the filing of a Formal Complaint.

A Complainant is always entitled to reasonably available Supportive Measures, regardless of whether a formal or informal resolution process is initiated. A Formal Complaint is a document submitted to the Title IX Coordinator by the Complainant alleging that a Respondent engaged in Prohibited Conduct and requesting an investigation. Following the filing of a Formal Complaint, Dartmouth will initiate an investigation and hearing process to determine if there is sufficient evidence, by a preponderance of the evidence, to establish that this policy has been violated. The nature of the reported conduct, the location of the reported conduct,

D00000021

and the role of the Respondent determines the procedures that will be used to investigate and resolve Formal Complaints. For ease of reference the entire process – from receipt of a report through resolution – for each category of Respondent can be found on the Title IX Office website (https://sexual-respect.dartmouth.edu/compliance/dartmouth-policies-procedures):

- Process for Resolving Reports against Students (https://sexual-respect.dartmouth.edu/policy/dartmouth-college-process-resolving-complaints-against-students)
- Process for Resolving Reports against Staff (https://sexual-respect.dartmouth.edu/policy/dartmouth-college-process-resolving-reports-against-staff-0)
- Process for Resolving Reports against Faculty (https://sexual-respect.dartmouth.edu/policy/dartmouth-college-process-resolving-reports-against-faculty)

A Respondent whose primary status is a Student, and who serves in a teaching, grading, research assistant, or lab assistant capacity shall be subject to the Process for Resolving Reports against Students.  A Respondent whose primary status is Staff or Faculty as defined in Section I but who is enrolled as a student as a benefit of employment shall be subject to the Process for Resolving Reports against Staff or Faculty. Where there is a question about the primary status of the Respondent, the Title IX Coordinator or Team, as applicable, shall determine which process applies to each Respondent named in a report.

Invitees and Third Parties are subject to corrective action under this Policy in accordance with the specific nature of their relationship to Dartmouth.  Dartmouth will take appropriate steps to investigate and respond to the conduct by Invitees and Third Parties consistent with the authority granted by Dartmouth's jurisdiction over the Respondent. Based on the role of the Invitee or Third Party, Dartmouth may have limited authority to discipline the Respondent.

In response to a report against an Invitee or Third Party, Dartmouth will typically follow the steps listed below:

1. The Title IX Coordinator will evaluate the nature of the Respondent's relationship with Dartmouth to determine the extent to which Dartmouth has disciplinary authority or control over the Respondent. The Title IX Coordinator will seek to make this determination within five (5) business days.

2. Consistent with Dartmouth's disciplinary authority over the Respondent, if any, Dartmouth may take action under this Policy. An Invitee or Third Party who is accused of violating Dartmouth policy may have their relationship with Dartmouth terminated and/or be permanently barred from Dartmouth or subject to other restrictions for failing to comply with this Policy.

3. Dartmouth may take steps to investigate the conduct to inform the appropriate response. Those investigative steps may vary depending on the nature of the conduct, Dartmouth's relationship with the Respondent, and the steps necessary to effectively address the conduct.  Investigative steps may include interviewing the parties and witnesses, when available, and a review of other relevant information. Where there is a sufficient factual basis, an Invitee or Third Party who is accused of violating this Policy may be permanently barred from Dartmouth or subject to other restrictions for failing to comply with this policy.

4. The Title IX Coordinator will notify the Complainant about any actions taken by Dartmouth. In addition, Dartmouth may provide appropriate Supportive Measures to an Invitee or Third Party Complainant, as described above in Section IX.E, and may help to identify external reporting options that may have enforcement authority over the Respondent.

In all instances, the Title IX Coordinator will determine the appropriate manner of resolution consistent with Dartmouth's commitment to a prompt and equitable process consistent with federal law and regulations, state law and this Policy. Dartmouth will ensure that any process used to respond to a report of misconduct against or on behalf of an Invitee or Third Party will take appropriate steps to restore or preserve equal access to Dartmouth's education programs or activities and remedy the effects of any sex discrimination as required under Title IX.

## XI. SANCTIONS

A Student or Employee determined to have committed an act of Prohibited Conduct in violation of this policy or any other relevant Dartmouth policy is subject to disciplinary action. Disciplinary action may include – but is not limited to – a reprimand, probation, deferred suspension, administrative leave without pay, or temporary or permanent separation from Dartmouth. Third Parties or Invitees who violate this policy may have their relationship with Dartmouth terminated and/or their privilege of being on Dartmouth premises withdrawn.

If a Student withdraws from Dartmouth, or an Employee separates from Dartmouth, at any time after a report has been made, Dartmouth may continue with any of the processes for informal or formal resolution, even without the Respondent's participation. Dartmouth may also, in its discretion, dismiss some or all of the allegations in the Formal Complaint. The determination as to how to resolve the report once a Student or Employee is no longer affiliated with Dartmouth will be based on the Title IX Coordinator's assessment of the actions necessary to meet its Title IX obligations, in consultation with other institutional officials as appropriate.

If a Student withdraws from Dartmouth after Dartmouth has begun an investigation but prior to a finding or resolution, an entry may, in appropriate circumstances, be made on their transcript that indicates the Student has withdrawn with a disciplinary investigation or Complaint pending. As noted above, Dartmouth may elect to continue with the investigation.

If an Employee separates from Dartmouth after Dartmouth has begun an investigation but prior to disciplinary charges being filed, an entry may, in appropriate circumstances, be made in their personnel file that indicates that employment terminated with an investigation pending. Dartmouth may elect to continue with the investigation.

If an Employee separates after disciplinary proceedings have been initiated but prior to resolution, an entry may, in appropriate circumstances, be made in their personnel file that indicates that employment terminated with disciplinary charges pending.

## XII. FREE SPEECH AND ACADEMIC INTEGRITY

Dartmouth is committed to the principles of free speech. Vigorous discussion and debate and academic freedom are fundamental to this commitment and may include speech that is offensive – for instance, speech that is controversial. That offensiveness, on its own, is not sufficient for the speech to constitute Prohibited Conduct. Rather, the conduct must be sufficiently severe, pervasive, and objectively offensive that it effectively denies equal access to or unreasonably interferes with an individual's ability to participate in employment or educational programs and activities. Such behavior compromises Dartmouth's integrity and tradition of intellectual freedom and will not be tolerated.

## XIII. CONFLICT OF INTEREST

A conflict of interest may arise when a member of the Dartmouth community uses or has the authority to use their position to improperly influence a Dartmouth decision, action or outcome with regard to the implementation and enforcement of this policy, including associated investigative and disciplinary procedures. It is the responsibility of all members of the Dartmouth community involved in any aspect of a report of Prohibited Conduct to identify and disclose potential or actual conflicts as they arise to the Title IX Coordinator and/or Human Resources. Dartmouth community members who are covered by Dartmouth's Conflict of Interest Policy (https://www.dartmouth.edu/~osp/resources/policies/dartmouth/cofinterest.html) are reminded of their obligation to comply with the requirements of that Policy. In the event any individual with a responsibility identified in this policy is a witness or has a conflict of interest that would compromise that individual's objectivity in discharging that responsibility, Dartmouth will appoint a designee.

## XIV. PREVENTION AND AWARENESS PROGRAMS

As part of its commitment to the prevention of Prohibited Conduct, Dartmouth offers education and awareness programs. Incoming Students and new Faculty and Staff receive prevention and awareness programming as part of their orientation, and all Students and Faculty and Staff receive ongoing training and related programs on an annual basis.

## XV. VIOLATIONS OF NEW HAMPSHIRE STATE LAW

Behavior that violates this policy also may violate the laws of the local jurisdiction in which the incident occurred and subject a Respondent to criminal prosecution by the presiding authority. An individual can choose to make a report to external law enforcement at any time and doing so does not preclude the individual from making a report to Dartmouth. Both processes can be pursued if an individual chooses to do so. Dartmouth encourages individuals to report an incident which may be a violation of New Hampshire State Law to external law enforcement. Prompt reporting to external law enforcement is important in a criminal prosecution. The following sections compiled from the New Hampshire General Laws may be relevant to this policy: Aggravated Felonious Sexual Assault, RSA 632-A:2; (http://www.gencourt.state.nh.us/rsa/html/LXII/632-A/632-A-2.htm) Felonious Sexual Assault, RSA 632-A:3 (http://www.gencourt.state.nh.us/rsa/html/LXII/632-A/632-A-3.htm); Sexual Assault, 632-A:4 (http://www.gencourt.state.nh.us/rsa/html/LXII/632-A/632-A-4.htm); Domestic Violence, RSA 173-B:1 (http://www.gencourt.state.nh.us/rsa/html/XII/173-B/173-B-1.htm); and Stalking, RSA 633:3-a (http://www.gencourt.state.nh.us/rsa/html/LXII/633/633-3-a.htm).

D00000024

Students, Faculty and Staff studying, working, or engaging in other Dartmouth activities outside the State of New Hampshire are governed by the applicable laws regarding sexual assault and other criminal offenses implicated by this policy.

Behavior that violates this policy also may subject a respondent to civil or criminal liability. Please note that the preponderance of the evidence standard used by Dartmouth is not the standard used for criminal culpability in most jurisdictions and a determination of responsibility under this Policy does not equate with a finding of a violation of criminal laws.

## XVI. AMENDMENT

Amendments to this policy, all processes for resolving reports against Respondents under this policy, and all other applicable procedures under this policy ("Amendments") shall be made as follows:

a) Amendments to update or correct information regarding resources, contacts, or other factual items may be made on an ongoing basis by the Title IX Office and shall become effective upon publication on the Title IX Office's web site (https://sexual-respect.dartmouth.edu/).

b) Amendments to ensure legal compliance may be made by the Office of General Counsel and shall become effective upon publication on the Title IX Office's web site (https://sexual-respect.dartmouth.edu/), following a 30-calendar-day period in which all Dartmouth Students and Employees receive notice of the proposed Amendments and the opportunity to comment.

c) All other Amendments shall originate either from a majority vote of a quorum of the General Faculty at a regularly scheduled meeting or by e-mail or other electronic means; or from approval by the Provost and Deans of the four faculties.  Following such approval, all Dartmouth Students and Employees shall receive notice that the Amendments are taking temporary effect for six months. To become permanent, such Amendments must then be approved by a majority vote of a quorum of the General Faculty and shall become effective upon publication on the Title IX Office's web site (https://sexual-respect.dartmouth.edu/). Such a vote may occur at a regularly scheduled meeting of the General Faculty or by e-mail or other electronic means.

[1] Throughout this policy, the pronouns "they", "them", and "their" are used intentionally to be inclusive of all genders.

[2] Former policies and procedures, which have been superseded by this policy, include, but are not limited to: Notice of Nondiscrimination [Updated November 7, 2015]; Unified Disciplinary Procedures for Sexual Assault by Students and Student Organizations; Undergraduate Disciplinary Procedures for Sexual Harassment, Domestic Violence, Dating Violence, and Stalking; Committee on Standards – Standard III; Geisel School of Medicine Disciplinary Procedures for Sexual Harassment, Domestic Violence, Dating Violence, and Stalking; Graduate Studies Disciplinary Procedures for Sexual Harassment, Domestic Violence, Dating Violence, and Stalking; Thayer School of Engineering Disciplinary Procedures for Sexual Harassment, Domestic Violence, Dating Violence, and Stalking; Tuck School of Business Disciplinary Procedures for Sexual Harassment, Domestic Violence, Dating Violence, and Stalking; Employee Sexual Harassment Policy;

D00000025

Employee Sexual Misconduct Policy [Updated January 26, 2015]; Consensual Relationships Policy and Employment of Relatives/Nepotism Policy; the Geisel Professionalism Policy – Undergraduate Medical Education; and Appointments, Promotions, and Titles at the Geisel School of Medicine.  This policy supersedes these former policies and procedures wherever they may appear in any Dartmouth publication, including but not limited to any handbook for Faculty, Staff, Employees, or Students, as defined in Section III of this policy.

[3] For reports against individuals who hold Dartmouth faculty, affiliate, postdoctoral, or house staff appointments, but are not employees, Dartmouth will evaluate whether the College has substantial control over both the respondent and the context in which the conduct is reported to have occurred.  Where the conduct is within Dartmouth's Education Program or Activity, this policy and accompanying processes will apply.

[4] The statutory definition of sexual assault referenced by the Title IX regulations also includes having or attempting to have sexual contact between persons who are related to each other within the degrees where marriage is prohibited by law.

[5] For the purpose of defining those positions subject to the Prohibited Interactions provisions of Section IX.A, serving as a teaching assistant or grader excludes those graduate or professional school students whose sole responsibility consists of a) marking assignments or exams of other graduate and professional school students according to a required grading rubric provided by a faculty member; or b) grading anonymized assignments or exams of other graduate or professional school students.  Such graduate or professional students with either or both of these responsibilities are instead subject to the notification, disclosure, and management plan requirements of Section IX.B.

D00000026