# DARTMOUTH

**EXHIBIT**

**B**

# Dartmouth College Process for Resolving Complaints Against Students

## Additional Details                                          ⌄

---

**POLICY ID**
046-0001

**EFFECTIVE DATE**
August 14, 2020

**LAST REVISED DATE**
October 20, 2021

**DIVISION**
Office of the President

**OFFICE OF PRIMARY RESPONSIBILITY**
Office of Equal Opportunity, Accessibility, and Title IX (EOATIX)
(https://eoatix.dartmouth.edu/)

## Summary of Policy

This policy outlines the process for resolving reports of prohibited conduct against students.

## Affected Parties

All Groups

## Procedures

**Exhibit**

**2**

**PROCESS FOR RESOLVING REPORTS AGAINST STUDENTS**

D00000027

**Pursuant to the Dartmouth Sexual and Gender-Based Misconduct Policy** (https://sexual-respect.dartmouth.edu/policy/dartmouth-college-sexual-and-gender-based-misconduct-policy-0)

---

Dartmouth College ("Dartmouth") is committed to providing a prompt and equitable response to reports of Prohibited Conduct under Dartmouth Sexual and Gender-Based Misconduct Policy (the "Policy").[1] Dartmouth's process for addressing Prohibited Conduct is grounded in fairness and support for all parties, includes procedural protections that ensure notice and meaningful opportunities to participate, and recognizes the dynamics involved in Prohibited Conduct.  For additional information, including the definitions for specific forms of Prohibited Conduct and related concepts, see: https://www.dartmouth.edu/sexualrespect/policies/index.html (https://www.dartmouth.edu/sexualrespect/policies/index.html).

The process outlined in this document follows the final Title IX regulations issued by the U.S. Department of Education's Office for Civil Rights in May 2020.  The regulations require recipients of federal funding who receive notice of sexual harassment in an education program or activity, committed against a person in the United States, to respond promptly and reasonably to a report of sexual harassment.  As set forth in the Policy, Dartmouth prohibits sexual harassment as defined by the Title IX regulations, as well as additional forms of Prohibited Conduct that are outside the jurisdiction of Title IX.  This process addresses all forms of Prohibited Conduct, with modifications to the hearing process based on the nature and the geographic location of the reported conduct.

Dartmouth will treat Complainants and Respondents equitably by offering Supportive Measures to a Complainant, and by following a formal resolution process that complies with the regulations before the imposition of any disciplinary sanction against a Respondent.

Upon receipt of a report of Prohibited Conduct, the matter may be resolved through:

1. Provision of Supportive Measures only;
2. Pursuing a formal resolution process, which is initiated by the filing of a Formal Complaint, and involves an investigation, hearing, and appeal; or,
3. Pursing an informal resolution process, after the filing of a Formal Complaint, which requires the consent of the Complainant, the Respondent, and Dartmouth.

Upon receipt of a report from any person, Dartmouth will promptly contact the Complainant to offer Supportive Measures, inform the Complainant of the availability of Supportive Measures with or without the filing of a Formal Complaint, explain to the Complainant the process for filing a Formal Complaint, and consider the Complainant's wishes with respect to Supportive Measures.  After the initial outreach to the Complainant, the Title IX Coordinator or designee will conduct an Initial Assessment to determine whether to proceed with Supportive Measures only or an informal or formal resolution process.

## I. TO WHOM THIS PROCESS APPLIES

D00000028

This process applies to acts of Prohibited Conduct reportedly committed by any Dartmouth student, including undergraduate students, and students in the Guarini School of Graduate and Advanced Studies, the Geisel School of Medicine, the Thayer School of Engineering, and the Tuck School of Business as defined in the Policy (collectively known together as "Students").[2]

This process pertains to acts of Prohibited Conduct committed by Students that occur within Dartmouth's Education Program or Activity.  The term Education Program or Activity includes all of Dartmouth's operations, including locations, events, or circumstances over which Dartmouth exercised substantial control over both the Respondent and the context in which the Prohibited Conduct occurred; and any building owned or controlled by a student organization that is officially recognized by Dartmouth.  The Title IX regulations, which direct Dartmouth's response to sexual harassment as defined by the Title IX regulations, do not draw a line between on campus, off campus, or online, provided the conduct occurred in an Education Program or Activity in the United States.  Examples include Dartmouth-sponsored, Dartmouth-funded or otherwise Dartmouth-supported study off campus, research, internship, mentorship, summer session, conferences, meetings, social events, or other affiliated programs or premises.

In keeping with Dartmouth's educational mission and commitment to foster a learning, living, and working environment free from discrimination and harassment, this process also pertains to acts of Prohibited Conduct that may fall outside of the jurisdiction set forth in the May 2020 Title IX regulations, including additional forms of sexual and gender-based harassment, as well as conduct that occurs outside the United States, but still within an Education Program or Activity.  Conduct outside of the United States, may include, for example, Dartmouth-sponsored, Dartmouth-funded or otherwise Dartmouth-supported study abroad.  Under certain circumstances, this process may apply to instances in which the conduct occurred outside of the Education Program or Activity. The nature of the conduct alleged, and the geographic location in which it occurs, may impact the nature of the hearing used in the formal resolution process, as set forth in the relevant processes for resolving reports.  Where the reported conduct falls within the Title IX regulations, the hearing process includes cross-examination by the party's advisor (Title IX Hearing Process.  Where the reported conduct falls outside of Title IX jurisdiction, the hearing process provides the parties with the opportunity to submit questions through the Hearing Coordinator and Chair of the Hearing Panel, and the Hearing Panel may consider any information provided in the final investigation report that the Hearing Panel finds reliable and credible (Other Prohibited Conduct Hearing Process.

## II. MAKING A REPORT

Dartmouth encourages all individuals to report Prohibited Conduct or a potential violation of the Policy to the Title IX Coordinator and/or to local law enforcement. A Complainant has the right to report, or decline to report, potential criminal conduct to law enforcement. Upon request, Dartmouth will assist a Complainant in contacting law enforcement at any time. Under limited circumstances posing a threat to health or safety of any individual or to comply with applicable law, Dartmouth may independently notify law enforcement.

An individual may make a report to Dartmouth, to law enforcement, to neither, or to both. Campus Title IX processes and law enforcement investigations operate independently of one another, although Dartmouth will coordinate information with the Department of Safety and Security as part of the Initial Assessment. Anyone

D00000029

can make a report of Prohibited Conduct under this policy regardless of affiliation with Dartmouth and regardless of whether or not the person reporting is the person alleged to be the victim of conduct or by any other means that results in the Title IX Coordinator receiving the person's verbal or written report.

- ○ **Make a report to the Title IX Coordinator in person, by telephone, by e-mail, by mail, or by any other means that results in the Title IX Coordinator receiving the person's verbal or written report, at:**

**Title IX Office** (https://sexual-respect.dartmouth.edu/about/about-title-ix-office)

Kristi Clemens   Title IX Coordinator

Gary Sund         Deputy Title IX Coordinator

Parkhurst Hall  Suite 05, 14 North Main St., Hanover NH 03755

A report may be made at any time (including during non-business hours) by using the telephone number or electronic mail address, or by mail to the office address, listed for the Title IX Coordinator.  To schedule an appointment, call **603 646 0922** or email: titleix@dartmouth.edu (mailto:titleix@dartmouth.edu)

https://sexual-respect.dartmouth.edu/ (https://sexual-respect.dartmouth.edu/)

- ○ **Make an anonymous report through the Dartmouth Compliance and Ethics Hotline** (https://secure.ethicspoint.com/domain/media/en/gui/35378/index.html)**, Dartmouth's telephone and web-based confidential reporting tool.** The Hotline allows the reporter to report concerns and communicate with Dartmouth administrators while maintaining anonymity. Depending on the nature of the information provided, Dartmouth's ability to respond may be limited. Additional information about anonymous reporting is located here (https://www.dartmouth.edu/~rmi/hotlinefaqs2018.pdf).

**Telephone:** (888)-497-0516

**Online:** www.dartmouth.ethicspoint.com (http://www.dartmouth.ethicspoint.com)

- ○ **If on campus, contact the Department of Safety and Security in person, by telephone, or by e-mail for assistance in filing a criminal complaint and preserving physical evidence at:**

**Department of Safety and Security** (https://www.dartmouth.edu/~security/)

5 Rope Ferry Road

Hanover, NH 03755

Safety.and.Security@Dartmouth.edu (mailto:Safety.and.Security@Dartmouth.edu)

(603)-646-4000

- ○ **If off campus, call 911 to reach local law enforcement, or contact:**

D00000030

**Hanover Police Department**

(603)-643-2222 (non-emergency number)

Or the local police department where the conduct occurred.

A Complainant may pursue some or all of these steps at the same time (e.g., a Complainant may simultaneously pursue a report to Dartmouth and a criminal complaint). When initiating any of the above options, a Complainant does not need to know whether they wish to request any particular course of action nor how to label what happened.  Dartmouth's processes and the legal system are independent of one another, and Dartmouth has its own interest in, and responsibility for, the enforcement of its Sexual and Gender-Based Misconduct Policy.  Dartmouth will not unilaterally defer its processes pending the outcome of a criminal process, nor will the outcome of any legal process be determinative of the Dartmouth's resolution or outcome.

## III. INITIAL ASSESSMENT

When the Title IX Office receives a report alleging a potential violation of the Policy, the Title IX Coordinator will promptly contact the Complainant to discuss the availability of Supportive Measures, inform the Complainant of the availability of Supportive Measures with or without the filing of a Formal Complaint, explain to the Complainant the process for filing a Formal Complaint, and consider the Complainant's wishes with respect to Supportive Measures.  As described in greater detail below, a Formal Complaint is a document submitted to the Title IX Coordinator by the Complainant alleging that a Respondent engaged in Prohibited Conduct and requesting an investigation.

This initial outreach to a Complainant occurs as part of an Initial Assessment,  which seeks to provide a consistent, integrated and coordinated response to all reports and to ensure that all Dartmouth community members have equitable access to information about Dartmouth resources, policies and procedural options for resolving the report.  The Initial Assessment seeks to gather information only to determine whether the Policy applies to the report and, if so, whether an informal or formal resolution process or the imposition of Supportive Measures only is the appropriate response under the Policy.  The Initial Assessment is not a finding of fact or responsibility. The Initial Assessment will also include a determination whether the reported information poses a serious or ongoing threat to campus safety which may require a timely warning pursuant to the Clery Act.

The Initial Assessment is conducted by the Title IX Coordinator or, at the discretion of the Title IX Coordinator, a small interdepartmental team (the "Title IX Team") that may include the Title IX Coordinator, a Deputy Title IX Coordinator, the Director of Safety and Security, and a representative from the Student Affairs office of the Respondent's School.  The Title IX Coordinator has the authority to include additional individuals or, based on considerations such as privacy, health and safety, and timeliness, to conduct an Initial Assessment independently or with a smaller group.[3]  In all cases, the Title IX Team will be limited to those individuals who need to be informed in order to provide effective and equitable review and timely resolution of reports while protecting the privacy of parties and witnesses as fully as possible.

Generally, the Initial Assessment will consider the nature of the report, the safety of the individual and the campus community, and the Complainant's expressed preference for the manner of resolution in determining the appropriate course of action to achieve the goals of Title IX and the Policy.  The Initial Assessment typically includes an initial intake meeting with the Complainant or Reporting Party to understand the nature and circumstances of the report and to provide the Complainant or Reporting Party with information about resources, procedural options, Supportive Measures and an opportunity to discuss Dartmouth's policies. Dartmouth will offer Supportive Measures to a Complainant, inform the Complainant of the availability of Supportive Measures with or without the filing of a Formal Complaint, and explain to the Complainant the process for filing a Formal Complaint, and consider the Complainant's wishes with respect to Supportive Measures.

In addition to the in-person meeting, Dartmouth will provide the Complainant or Reporting Party with written information about resources, procedural options, and reasonably available Supportive Measures.  This written information shall include a notification about the process for seeking disability-based accommodations, academic adjustments, and/or auxiliary aids under Section 504 of the Rehabilitation Act and/or the Americans with Disabilities Act.

The Title IX Coordinator or Deputy Title IX Coordinator will be responsible for determining whether the reported conduct falls within the scope of the Policy and this process, and more specifically, whether the reported conduct falls within Title IX jurisdiction as defined by the Title IX regulations.  If so, Dartmouth may move forward with a Formal Complaint process as described below.  If not, Dartmouth may be required to dismiss any Formal Complaint.

The Title IX Coordinator or Deputy Title IX Coordinator will evaluate reasonably available information to make the following determinations:

**1.** Did the reported conduct occur within Dartmouth's Education Program or Activity; this question considers:

a. Does Dartmouth have substantial control over the Respondent; and

b. Does Dartmouth have substantial control over the context in which the conduct is reported to have occurred; or

c. Did the conduct occur in a building owned or controlled by a student organization that is officially recognized by Dartmouth;

**2.** Did the reported conduct occur in the United States; and,

D00000032

**3.** Would the facts set forth by the report, if substantiated, constitute a violation of sexual harassment as defined by the Title IX regulations.

Based on the answers to these questions, the Title IX Coordinator will make a determination about scope and process.  This is a threshold determination regarding scope and jurisdiction, which will determine appropriate next steps as follows:

- Where the answer to these three questions is yes, and a Formal Complaint is filed, Dartmouth will follow the formal resolution process required by the Title IX regulations (Title IX Hearing Process).  The Title IX Hearing Process includes cross-examination by the party's advisor. The hearing will allow the participants to simultaneously see and hear each other but may be conducted remotely through videoconferencing technology.

- Where the answer to any of these three questions is no, Dartmouth will dismiss the allegations in the Formal Complaint related to sexual harassment as defined in the Title IX regulations.  If there are additional allegations of Prohibited Conduct in the Formal Complaint, Dartmouth will proceed with a formal resolution process for any other allegations that, if true, may constitute Prohibited Conduct outside of the Title IX regulations (Other Prohibited Conduct Hearing Process).  The Other Prohibited Conduct Hearing Process provides the parties with the opportunity to submit questions through the Hearing Coordinator and Chair of the Hearing Panel, and the Hearing Panel may consider any information provided in the final investigation report that the Hearing Panel finds reliable and credible.

In some instances, the Title IX Office may not have jurisdiction under Title IX or the Policy to pursue the report, either because the conduct did not occur in a Dartmouth Education Program or Activity, or because the conduct, even if substantiated, would not constitute a violation of any form of Prohibited Conduct under the Policy.  As noted in the Policy, under limited circumstances, Dartmouth may use this process to investigate and resolve instances in which the conduct occurred outside of the Education Program or Activity.

The Title IX Coordinator will provide written notice of the determination as to scope and jurisdiction to the Complainant or Reporting Party, refer that individual to the appropriate resources, including local law enforcement resources as applicable, and provide reasonably available Supportive Measures.

In the event a Respondent is charged with a violation of an applicable conduct code that is related to the report of Prohibited Conduct, the Title IX Office may also investigate and resolve the related conduct charge.  If the Respondent is charged with a violation of another Dartmouth policy that is unrelated to the alleged violation of the Policy, the Title IX Office shall coordinate its investigation and resolution as appropriate with any such investigation or resolution under the other applicable Dartmouth policy.  Such coordination may include, at the discretion of the Title IX Office, the sharing of information consistent with the requirements of the Federal Educational Rights and Privacy Act, Dartmouth's student records policy, and other applicable laws and policies.

The Title IX Office will document each report or request for assistance, including requests for Supportive Measures, as well as the response to any such report or request; and will review and retain copies of all reports generated as a result of any investigation.  Dartmouth will maintain the records for a period of seven years. The records will be kept private to the extent required or permitted by law.

D00000033

23235446455466566665476647675787

As part of the Initial Assessment of the facts, Dartmouth will:

1. Promptly contact the Complainant to discuss the availability of Supportive Measures;
2. Consider the Complainant's wishes with respect to Supportive Measures;
3. Assess the nature and circumstances of the report;
4. Address immediate physical safety & emotional well-being of the Complainant or other campus community members;
5. Discuss the Complainant's expressed preference for manner of resolution and any barriers to proceeding;
6. Notify the Complainant of the right to contact or decline to contact law enforcement, and if requested, assist them with notifying law enforcement;
7. Notify the Complainant of the availability of medical and counseling resources to address physical and mental health concerns and to preserve evidence;
8. Notify the Complainant of the importance of preservation of evidence;
9. Enter the report into Dartmouth's Daily Crime Log if required by the Clery Act;
10. Assess the reported conduct for the need for a timely warning under the Clery Act;
11. Provide the Complainant with information about on- and off-campus resources;
12. Provide the Complainant with a copy of the Policy and relevant procedures and an explanation of the procedural options, including seeking Supportive Measures and the process for filing a Formal Complaint;
13. Inform the Complainant that they may seek an advisor of their choosing to assist them throughout the investigation and resolution of the report, that the advisor may accompany them to any meeting or proceeding under this process, and that if the matter proceeds under the formal resolution process with the Title IX Hearing Process and either party does not have an advisor, Dartmouth will provide an advisor, without fee or charge, to conduct questioning on behalf of the party at the hearing;
14. Assess for evidence of a pattern or other similar conduct by the Respondent; and
15. Explain Dartmouth's policy prohibiting retaliation.

During the Initial Assessment, a Complainant may request Supportive Measures only, or may file a Formal Complaint. Alternatively, as described below, the Title IX Coordinator may determine that it is appropriate to file a Formal Complaint even in the absence of a Formal Complaint filed by a Complainant. After the filing of a Formal Complaint, the Complainant may decide to seek Informal Resolution. A Complainant is always entitled to reasonably available Supportive Measures, regardless of whether a formal or informal resolution process is initiated. In some instances, a Complainant may request that their identity not be shared with the Respondent or that Dartmouth not pursue an investigation. Where possible, Dartmouth will seek to accommodate a Complainant's request, provided that it can do so in the context of Dartmouth's responsibility to provide a safe and non-discriminatory environment for all Dartmouth community members.

The formal resolution process (investigation, hearing and appeal process) is initiated by the filing of a Formal Complaint. A Formal Complaint is a document submitted to the Title IX Coordinator by the Complainant alleging that a Respondent engaged in Prohibited Conduct and requesting an investigation. The Formal

D00000034

Complaint may be submitted to the Title IX Coordinator in person, by mail, or by electronic mail, using the Formal Complaint form (https://cm.maxient.com/reportingform.php?DartmouthCollege&layout_id=10).  The Complainant may also contact the Title IX Coordinator directly for assistance.

Dartmouth may consolidate Formal Complaints against more than one Respondent, or by more than one Complainant against one or more Respondents, or by one party against the other party, where the allegations of Prohibited Conduct arise out of the same facts or circumstances.

The Title IX Coordinator also has the discretion to file a Formal Complaint.  In evaluating the appropriate manner of resolution, including whether the Title IX Coordinator will file a Formal Complaint in the absence of a Formal Complaint by the Complainant, the Title IX Coordinator will consider the following factors:

1.      The seriousness, persistence or pervasiveness of the reported conduct;

2.      The respective ages and roles of the Complainant and Respondent;

3.      Whether there have been other complaints or reports of harassment, misconduct or Prohibited Conduct against the Respondent;

4.      The right of the Respondent to receive notice and relevant information, including the names of the Complainant and any witnesses, before disciplinary action is imposed;

5.      Whether the circumstances suggest there is a risk of the Respondent committing additional acts of sexual violence or other violence, including but not limited to reported threats of sexual violence or other violence by the Respondent against the Complainant or others;

6.      Whether the Respondent has a known history of arrests or prior conduct violations (at Dartmouth or elsewhere) indicating a history of violence;

7.      Whether the sexual violence was reportedly committed by multiple individuals;

8.      Whether the circumstances suggest there is an increased risk of future acts of sexual violence under similar circumstances;

9.      Whether the sexual violence was reportedly perpetrated with a weapon;

10.     Whether the Respondent is a Dartmouth employee;

11.     Whether Dartmouth possesses other means to obtain relevant evidence (e.g., security cameras or personnel, physical evidence); and

12.     The Respondent's right to access information if such information is maintained in an "education record" under the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. §1232g; 34 C.F.R. Part 99 (https://www2.ed.gov/policy/gen/reg/ferpa/index.html), and/or subject to any other applicable law, regulation, or policy.

D00000035

Dartmouth will take all reasonable steps to respond to the report consistent with a Complainant's requested course of action, but its ability to do so may be limited based on the nature of the reported information.  Where the Title IX Coordinator files a Formal Complaint, the Title IX Coordinator or designee will inform the Complainant about the chosen course of action.

The Initial Assessment will proceed to the point where a reasonable assessment of the safety of the individual and of the campus community can be made, and Dartmouth has sufficient information to determine the appropriate course of action. Dartmouth will seek to complete the Initial Assessment as promptly as possible, typically within ten (10) business days.  There may be circumstances, however, where the Initial Assessment takes longer based on the availability of the Complainant or other necessary information, the need to gather additional information, or other factors outside of Dartmouth's control.  Dartmouth also understands that a Complainant may engage in delayed decision-making, which may impact the timing of the conclusion of the Initial Assessment.

Dartmouth may remove a Student Respondent on an emergency basis from Dartmouth property or employment, education or research programs or activities.  Before imposing an emergency removal, Dartmouth will undertake an individualized analysis of safety and risk for the campus community to determine whether the Respondent's presence in the program or activity poses an immediate threat to the physical health or safety of any student or other individual arising from the allegations of sexual harassment justifies removal.

The Title IX Coordinator will promptly provide the Respondent with written notice of the removal and an opportunity to challenge the removal. That notice shall include a statement that Dartmouth's use of any information the Respondent chooses to provide may subsequently be used in implementation of any aspect of the Policy or this resolution process.  The Respondent will have 72 hours to submit a written challenge to the safety and risk analysis to the Title IX Coordinator, which will be immediately reviewed.  The Title IX Coordinator will assign an impartial and neutral administrator or external professional to evaluate the information in support of the individualized safety and risk analysis.  The Respondent will have an opportunity to present relevant evidence challenging the safety and risk analysis.  The decision maker will submit a final decision in writing to the Respondent within 3 days. The decision-maker may also consult with a representative of the student affairs office of the Respondent's School or seek input from the Complainant. The Title IX Coordinator will notify the Complainant and Respondent in writing of the outcome of the challenge.

At the conclusion of the Initial Assessment, the Complainant will receive a written notice of the determination about how Dartmouth will proceed.

## IV. STANDARD OF EVIDENCE

In all stages of the process, Dartmouth will apply the preponderance of the evidence standard (i.e., more likely than not) when determining whether Dartmouth policy has been violated.

## V. ADVISORS

Complainants and Respondents are entitled to be accompanied and assisted by an Advisor of their choosing at both formal and informal meetings, investigation interviews and, if applicable, a subsequent panel hearing.  There is no requirement that the Advisor be an individual from the Dartmouth community.  Generally, Advisors

D00000036

may not participate in the process or speak on behalf of the Complainant or Respondent, although Advisors are permitted to conduct cross-examination of the parties and witnesses during a panel hearing under the Title IX Hearing Process.  In addition, Advisors may ask to suspend any meetings, interviews, or hearings briefly to provide consultation; Dartmouth retains the discretion to deny such requests if they are excessive, burdensome, or otherwise unreasonable.  Complainants and Respondents may choose to have an attorney serve as their Advisor, but adjustments to the process, including scheduling of interviews or hearings, will not be made for any Advisors, including attorneys, if they unduly delay the process.  If a party does not have an Advisor and the matter is proceeding to a panel hearing under the Title IX Hearing Process, Dartmouth will provide an Advisor, without fee or charge, to the party for the sole purpose of conducting questioning at the hearing on behalf of that party.

## VI. FORMAL RESOLUTION PROCESS

As depicted in this overview flow chart (https://sexual-respect.dartmouth.edu/sites/sexual_respect.prod/files/sexual_respect/wysiwyg/student_process_flow_chart_0.pdf), a formal resolution process will occur when (a) a report of a violation of the Policy is made and the Complainant files a Formal Complaint; or (b) the Title IX Coordinator files a Formal Complaint after making the determination that a formal resolution process is necessary.

### A. Investigation

### 1. Expectations for the Parties

During the investigation and resolution process, both the Complainant and Respondent have equal rights, including the opportunity to receive a written notice of investigation; to participate in the investigation; to review and present information and evidence; to be accompanied by an advisor of their choice to any meeting; to timely and equal access to all information gathered that is directly related to the allegations in the Formal Complaint, as well as the information contained in the investigation report that will be used in disciplinary proceedings; to timely written notice of meetings at which their presence will be requested or required, including the purpose of the meeting and participants, with sufficient time to prepare; to notice of the hearing; to question the other party during the hearing, either through the party's Advisor or through the Hearing Coordinator/Chair; to simultaneous written notice of the outcome, sanction, and rationale; and to appeal the outcome.

The Investigator may receive any information presented by the parties, but the Investigator, not the parties, is responsible for gathering relevant evidence. The Complainant and Respondent will be asked to identify witnesses and provide other relevant information, such as documents, communications, and other evidence, if available.  The parties are encouraged to provide all relevant information as promptly as possible to facilitate prompt resolution. In the event that a party declines to voluntarily provide material information, Dartmouth's ability to conduct a prompt, thorough, and equitable investigation may be impacted. Dartmouth will not restrict the ability of either party to discuss the allegations under investigation or to gather and present relevant evidence.

D00000037

All Dartmouth community members are expected to provide truthful information in any report or proceeding under this Policy and are further expected to cooperate with Dartmouth in any such proceeding. Submitting or providing false or misleading information in bad faith or with a view to personal gain or intentional harm to another in connection with an incident of prohibited conduct is prohibited and subject to disciplinary sanctions. This provision does not apply to reports made or information provided in good faith, even if the facts alleged in the report are not later substantiated or no policy violation is found to have occurred.

## 2. Initiating an Investigation

The Title IX Office will appoint one or more trained investigators to conduct a prompt, thorough, fair and impartial investigation. The Title IX Office will have the discretion to determine whether the investigator will be internal (an employee at Dartmouth) or external (an individual outside of the Dartmouth community), or a combination of both internal and external investigators working as co-investigators. The role of the investigator will be to gather information through interviews of the Complainant, Respondent, and witnesses and synthesize the information in a report that will be provided to the Complainant, Respondent, and the Hearing Panel (which is constituted as described below). The investigation report will include all relevant information provided by either party that will be used in the determination of responsibility or sanction.

Any investigator used by Dartmouth will receive annual training on the issues related to sexual and gender-based harassment, sexual assault, dating violence, domestic violence, and stalking; the definition of sexual harassment in the Title IX regulations; the scope of Dartmouth's Education Program and Activity; and on how to conduct an investigation and resolution process that is fair and impartial, provides parties with notice and a meaningful opportunity to be heard, and protects the safety of complainants while promoting accountability; how to create an investigation report that fairly summarizes relevant evidence; and how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias. The investigator will be impartial and free from conflict of interest or bias.

## 3. Informational Meeting with the Respondent

Dartmouth will provide outreach to a Respondent, in writing, to invite the Respondent to an informational meeting, similar to the intake meeting with the Complainant. The written communication will include notice of the date, time, location, participants, and purposes of the informational meeting, and will be provided with sufficient time for the Respondent to prepare to participate in the meeting.

At the initial meeting, the Title IX Coordinator or designee will provide the Respondent with information about resources, procedural options, and remedial measures and an opportunity to discuss Dartmouth's policies. In addition to the in-person meeting, Dartmouth will provide the Respondent with written information about resources, procedural options, and reasonably available Supportive Measures. This meeting is informational in nature and is separate and distinct from a fact-gathering interview with the investigator. Dartmouth may also provide a written notice of investigation during this informational meeting.

## 4. Notice of Investigation

After a Formal Complaint is filed, the Title IX Coordinator will notify the Complainant and the Respondent, in writing, of the following information:

D00000038

(1) notice of the process for formal and informal resolution;

(2) Sufficient details regarding:

a) the identities of the Complainant and the Respondent, if known;

b) the date, time (if known), location, and nature of the reported conduct;

(3) the reported policy violation(s);

(4) the name of the investigator;

(5) information about the parties' respective rights and responsibilities;

(6) the prohibition against retaliation;

(7) the importance of preserving any potentially relevant evidence in any format;

(8) how to challenge participation by the investigator on the basis of a conflict of interest or bias;

(9) a statement that the Respondent is presumed not responsible for the alleged conduct and that a determination regarding responsibility is made at the conclusion of the formal resolution process;

(10) that the parties are entitled to an advisor of their choice, including an attorney advisor, and the advisor is permitted to review the evidence gathered in the investigation;

(11) any provision of the applicable student code of conduct stating that Dartmouth prohibits knowingly making false statements or knowingly submitting false information during the grievance process;

and

(12) a copy of the policy and this process.

If the investigation reveals the existence of additional or different potential policy violations, including a violation of a Supportive Measure, the Title IX Office will issue a supplemental notice of investigation.

## 5. Overview of Investigation

During an investigation, the investigator will seek to meet separately with the Complainant, Respondent, and relevant witnesses.  The investigator will send written notice of the interview date, time, and location, name of participant(s) and purpose of the interview to the parties and witnesses, in sufficient time for the party to prepare and participate.  The investigator will also gather other relevant information or evidence, including documents, photographs, communications between the parties, and medical records (subject to the consent of the applicable person), and other electronic records as appropriate.  The investigator will not require, allow, rely upon, or otherwise use questions or evidence that constitute, or seek disclosure of, information protected under a legally recognized privilege, unless the person holding such privilege has waived the privilege.  If a person voluntarily chooses to share medical or counseling records with the investigator, they must sign a

D00000039

written consent that acknowledges that relevant information from the medical or counseling records must be shared with the other party to ensure the other party has notice of that information and an opportunity to respond.  At the conclusion of the investigation, the Complainant and the Respondent will both have the opportunity to review and respond to all information gathered in the investigation that is directly related to the allegations, including information shared by the Complainant or the Respondent during their interviews or through evidence either provides.

The investigator may visit relevant sites or locations and record observations through written, photographic, or other means. In some cases, the investigator may consult medical, forensic, technological, or other experts when expertise on a topic is needed in order to achieve a fuller understanding of the issues under investigation.

The investigator may also consider information publicly available from social media or other online sources that comes to the attention of the investigator.  The Title IX Office does not actively monitor social media or online sources, however, and as with all potentially relevant information, the Complainant, Respondent, or witness should bring online information to the attention of the investigator.

The investigator will seek to complete the fact gathering stage of the investigation within 30 business days of the issuance of the notice of investigation.  As detailed later in this process, The Title IX Coordinator and investigator may grant temporary delays of the investigation or the limited extension of time frames for good cause with written notice to the Complainant and the Respondent of the delay or extension and the reasons for the action.  Unless requested by a party or witness, Dartmouth does not conduct interviews during the reading or finals period.

## 6. Witnesses

Both the Complainant and Respondent have the option to provide names of potential witnesses to the investigator.  Witnesses are individuals who may have information relevant to the incident, including individuals who may have observed the acts in question, may be able to provide contextual information, or may have other information related to the incident, the disclosure, or related matters. Witnesses may also be offered to provide subject matter expert information.  Witnesses may not participate solely to speak about an individual's character; how individuals present themselves in other contexts (*e.g.*, friendly, kind, and well-liked) has little probative value in evaluating whether particular conduct occurred. Where witnesses are interviewed as part of the investigation, the name of the witness and the information gathered in the interviews will be shared with the parties at the conclusion of the investigation.  The investigator has the discretion to determine which of those potential witnesses, or other persons, may have relevant information about the alleged conduct.  Witnesses may include individuals outside the Dartmouth community.

## 7. Additional Evidence

Both the Complainant and the Respondent are permitted to provide other relevant evidence to the investigator.  Evidence may be inculpatory or exculpatory.  Evidence includes any facts or information presented in support of an assertion and may include text messages, email exchanges, timelines, receipts, photographs, etc.  Any

D00000040

documentation shared by the Complainant or the Respondent with the investigator will be provided to the other party. The investigator may also consider additional documents, items or other relevant information.

During the course of the investigation, the parties should bring any new or evolving evidence, such as harassing or retaliatory conduct, to the attention of the investigator. The investigator may consider such information in the investigation and will also share any information about retaliation or violation of the terms of an interim protective measure with the Title IX Coordinator for further action.

**8. Relevance and Evidentiary Considerations**

Dartmouth will not restrict the ability of either party to gather and present relevant evidence. Evidence is relevant if it makes a material fact more or less probable than it would be without the evidence. In general, the investigator has the discretion to determine the relevance and probative value of information proffered or received.

Information that does not directly relate to the facts at issue, but instead reflects upon the reputation, personality, qualities, or habits of an individual is character evidence and is not relevant to the determination of whether there is a Policy violation.

In addition, the investigator has the discretion to evaluate the relevance of the following evidentiary considerations.

a.    ***Prior or Subsequent Conduct of the Respondent:*** Prior or subsequent conduct of the Respondent may be considered in determining pattern, knowledge, intent, motive, or absence of mistake. For example, evidence of a pattern of prohibited conduct by the Respondent, either before or after the incident in question, regardless of whether there has been a prior finding of a policy violation, may be deemed relevant to the determination of responsibility for the prohibited conduct under investigation. The determination of relevance of pattern evidence will be based on an assessment of whether the previous or subsequent conduct was substantially similar to the conduct under investigation or indicates a pattern of similar prohibited conduct so distinctive and so closely resembling either party's account of the encounter as to tend to prove a material fact may be considered. The investigator will determine the relevance of this information and both parties will be informed if evidence of prior or subsequent conduct is deemed relevant.

b.    ***Prior Sexual History of the Parties***: An individual's character or reputation with respect to other sexual activity is not relevant and will not be considered as evidence. Similarly, an individual's prior or subsequent sexual activity is typically not relevant and will only be considered as evidence under limited circumstances. For example, prior sexual history may be relevant to explain the presence of a physical injury or to help resolve other questions raised in the investigation. It may also be relevant to show that someone other than the Respondent committed the conduct alleged by the Complainant. The investigator will determine the relevance of this information and both parties will be informed in writing if evidence of prior sexual history is deemed relevant.

c.    ***Prior Sexual History Between the Parties***: Where the parties have a prior sexual relationship, and the existence of consent is at issue, the sexual history between the parties *may* be relevant to help understand the manner and nature of communications between the parties and the context of the relationship, which may have

D00000041

bearing on whether consent was sought and given during the incident in question.  Even in the context of a relationship, however, consent to one sexual act does not, by itself, constitute consent to another sexual act, and consent on one occasion does not, by itself, constitute consent on a subsequent occasion.   The investigator will determine the relevance of this information and both parties will be informed if evidence of prior sexual history is deemed relevant.

## 9. Acceptance of Responsibility

At any point during the investigation, the Respondent may elect to accept responsibility for some or all of the policy violations at issue. Where there is an acceptance of responsibility as to some but not all of the charges, the investigation will continue to conclusion. Where there is an acceptance of responsibility as to all of the potential policy violations, the investigator will complete an investigation report of all information gathered to date and refer the matter to the Hearing Panel for sanctioning as described below.

## 10. Review of Information Gathered

Prior to the completion of the investigation report, the investigator will make information gathered in the investigation available for review by the parties and their advisors.  The parties will have an equal opportunity to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations raised in a Formal Complaint, including the evidence upon which Dartmouth does not intend to rely in reaching a determination regarding responsibility and inculpatory or exculpatory evidence, whether obtained from a party or other source, so that each party can meaningfully respond to the evidence prior to conclusion of the investigation.  The investigator will send to each party and the party's advisor, if any, the evidence subject to inspection and review in an electronic format or a hard copy, and the parties will have ten (10) business days to submit a written response, which the investigator will consider prior to completion of the investigative report.  In the written submission, the parties may offer additional comment or feedback on the facts as gathered, clarify information previously shared, suggest additional witnesses, suggest additional lines of questioning or inquiry, or identify any other relevant information or evidence to assure the thoroughness, sufficiency and reliability of the investigation.

## 11. Investigation Report

The investigator will produce a written investigation report that fairly summarizes the relevant information and facts gathered during the investigation and may include direct observations and reasonable inferences drawn from the facts and discussion of any consistencies or inconsistencies between the various sources of information.  As noted above, the investigator has the discretion to determine the relevance of any witness or other evidence and shall exclude information in preparing the investigation report if the information is irrelevant, immaterial, or more prejudicial than informative.  For example, the investigator shall exclude statements of personal opinion by witnesses and statements as to general reputation for any character trait, including honesty.  The investigation report will be a fair and thorough summary of all relevant information gathered that is inculpatory or exculpatory the accounts of the Complainant, the Respondent or other witnesses.

D00000042

The investigation report will include a determination by the investigator whether the conduct alleged in the Formal Complaint falls within the scope of the Policy and the definitions of Prohibited Conduct.  In particular, the investigator will determine whether the conduct alleged, if substantiated, would constitute Prohibited Conduct.  This is not a determination of responsibility, nor does it involve a determination about the credibility of the information gathered; those decisions are reserved for the Hearing Panel.  Rather, this evaluation accepts all facts as presented by the Complainant as true in order to determine the format of the hearing and the potential policy violations that will be the subject of the hearing.

The Title IX Coordinator will provide the investigative report, along with a written notice of hearing, to the parties, their advisors, and the Hearing Panel members, in an electronic format or a hard copy ten (10) days prior to the scheduled hearing.  The Complainant and Respondent are provided the opportunity, in writing, to offer any additional comment or feedback with respect to the facts or the investigator's determination about scope or jurisdiction.

## 12. Dismissal of Formal Complaint

The Title IX Coordinator will review the investigator's determination as to whether the conduct alleged in the Formal Complaint falls within the scope of the Policy and the definitions of Prohibited Conduct.  Based on the determination by the investigator in the investigative report, the Title IX Coordinator must dismiss some or all of the allegations in the Formal Complaint if: 1) the conduct alleged, even if substantiated, would not constitute sexual harassment as defined in the Title IX regulations; 2) the conduct did not occur within Dartmouth's education program or activity; or, 3) the conduct did not occur against a person in the United States.  The Title IX Coordinator may dismiss the Formal Complaint or any allegations there in if: 1) the Complainant notifies the Title IX Coordinator in writing that they would like to withdraw the Formal Complaint or any allegation therein; 2) the Respondent is no longer enrolled or employed by Dartmouth; or 3) specific circumstances prevent Dartmouth from gathering sufficient evidence to reach a determination on the merits.

The Title IX Coordinator has the discretion to dismiss some or all of the allegations in a Formal Complaint at any time if, throughout the initial assessment, investigation, or hearing of a Formal Complaint, it becomes apparent that the conduct, even if substantiated, would not constitute sexual harassment as defined by the Title IX regulations, did not occur in a Dartmouth Education Program or Activity, or did not occur against a person in the United States.

If the Title IX Coordinator dismisses the Formal Complaint with respect to Title IX sexual harassment, the Title IX Coordinator may determine that sufficient cause exists to move forward with the resolution of the remaining allegations if those allegations, if true, would constitute Prohibited Conduct outside the Title IX regulations (Other Prohibited Conduct Hearing Process).

## 13. Notice of Hearing

The Title IX Coordinator or designee will provide the Complainant and Respondent with a written notice of hearing.  The notice of hearing will include: the specific policy violations that will be the subject of the hearing; the date time, and location of the hearing; the names of the hearing panel members; how to challenge

D00000043

participation by the hearing panelists on the basis of conflict of interest or bias; the right to have an advisor present at the hearing and conduct cross-examination on the party's behalf under the Title IX Hearing Process; that Dartmouth will provide an advisor, without fee or charge, to conduct cross-examination on behalf of the party at the Title IX Hearing Process if the party does not have an advisor present for the Title IX Hearing Process; how to request that witnesses be present at the hearing; and, information about the specific hearing format for sexual harassment as defined by the Title IX regulations and/or other Prohibited Conduct.

If some or all of the allegations in the Formal Complaint have been dismissed, the parties will receive written information about how to appeal the dismissal of the Formal Complaint.

### 14. Impact and Mitigation Statements

The Complainant may submit a written statement describing the impact of the Prohibited Conduct on the Complainant and expressing a preference about the sanction(s) to be imposed.  The Respondent may submit a written statement explaining any factors that the Respondent believes should mitigate or otherwise be considered in determining the sanctions(s) imposed. The Title IX Coordinator will provide any statement(s) to the Hearing Panel, which will only be considered if there is a finding of responsibility.  Each party has the opportunity to view the other party's statement.

### B. Hearing Panel: Role, Procedure and Responsibility

A Hearing Panel consists of fair and impartial decision-makers who will conduct an objective evaluation of all relevant evidence, including both inculpatory or exculpatory evidence.  The role of the Hearing Panel is to provide all parties with an equitable opportunity to be heard; to serve as a safeguard on the reliability and accuracy of the investigative process; to give appropriate consideration to victim impact and mitigating factors; and to reach a full and fair determination of any sanction, should there be a finding of responsibility.  All members of the Hearing Panel will have received appropriate training to participate as informed and impartial decision-makers; this training will include the content provided to investigators, as well training on any technology to be used at a live hearing and on issues of relevance of questions and evidence, including questions about prior sexual history.  The Hearing Panel may reach credibility determinations but may not base credibility determinations on a person's status as a Complainant, Respondent or witness.

Hearings must be prompt, fair, and impartial, affording the Complainant's allegations and the Respondent's defenses all due consideration and protecting the rights of both parties.  The Hearing Panel will review the final investigative report.  The Hearing Panel will also carefully review the evidentiary record, including witness statements, documents, and physical evidence.

A Hearing Panel comprises three Dartmouth Employees, identified as follows, whom the Title IX Coordinator or designee shall convene:

- The Director of Community Standards and Accountability or designee;
- The Dean responsible for Student Affairs designated by the Dean of the College (if the Respondent is an undergraduate) or designated by the Dean of the Respondent's School; and

D00000044

- A trained staff member, who holds an appointment outside the Complainant's and Respondent's declared majors or areas of concentration or School, as applicable.

The Title IX Coordinator or designee shall identify one member of the Hearing Panel as the Chair.  The Hearing Panel members must have no prior experience with the parties, witnesses or incident(s) in question that would present any actual conflict of interest.  The Complainant and Respondent will be informed of the composition of the Hearing Panel and may raise a challenge for actual bias or conflict of interest to the Title IX Coordinator before the review begins.  The Title IX Coordinator shall render a determination in writing on any such challenge, which determination shall be final.

The scope of the hearing shall be as follows:

- The Hearing Panel will determine: whether there is sufficient evidence, by a preponderance of the evidence, to support a finding of responsibility as to each element of each Policy violation at issue.
- If the Hearing Panel determines that the evidence is sufficient to support one or more policy violations, the Hearing Panel will issue a determination as to the appropriate sanction.

### 1. Role of the Chair

The Chair of the Hearing Panel presides over the Hearing Panel and shall have equal voice and vote with the other members.  The Chair may be assisted by an administrative, non-voting Hearing Coordinator, who will assist the Chair in the administration of the hearing process, including procedural matters and decisions leading up to the hearing, determinations about information that will be considered or not, appropriate and inappropriate lines of questioning based on relevance, and the overall decorum and conduct of the proceedings.  The Hearing Coordinator may be a Dartmouth employee or an external professional.  The Chair, in consultation with the Hearing Coordinator, is also responsible for delivering any communications on behalf of the Hearing Panel, with appropriate input from other Hearing Panel members.

### 2. Hearing Format, Deliberations, and Outcome

### a. Hearing Format

The format of the Hearing will be determined by the type of Prohibited Conduct charged and the geographic location of the conduct.  For hearings that involve any allegation of sexual harassment as defined by the Title IX regulations, even where there are additional allegations not captured by the Title IX regulations, the hearing will include cross-examination by the party's advisor, to be conducted directly, orally and in real-time.  For hearings that involve only Prohibited Conduct that falls outside of Title IX jurisdiction, the parties will have the opportunity to submit questions through the Hearing Coordinator and Chair of the Hearing Panel, and the Hearing Panel may consider any information provided in the final investigation report that the Hearing Panel finds reliable and credible.

The hearing is an opportunity for the parties to address the Hearing Panel. The parties may address any information in the investigative report, supplemental statements submitted in response to the investigative report or, at the time of sanction, provide verbal impact and mitigation statements.  Dartmouth will make all evidence gathered available to the parties at the hearing to give each party equal opportunity to refer to such

D00000045

evidence during the hearing, including for purposes of cross-examination.  In reaching a determination, the Hearing Panel will meet with the Complainant, Respondent, investigator, and any relevant witnesses, but the Hearing Panel may not conduct its own investigation.

The Hearing Panel has the discretion to determine the format for the hearing and its deliberations.  Typically, the parties will have an opportunity to provide an opening statement to the Hearing Panel.  Each party will then have an opportunity to address the Hearing Panel and respond to questions by the Hearing Panel, or as described below, the other party's advisor.  The Hearing Panel will also hear from relevant witnesses, including the investigator.  Each party will have the opportunity to question the other party, the witnesses, and the investigator, either by submitting questions through the Hearing Panel or, as described below, through their advisor of choice.  After all parties and witnesses have been heard, the parties will have an opportunity to provide a closing statement.  At the conclusion of the hearing, the panel will deliberate in private to determine whether there is sufficient evidence, by a preponderance of the evidence, that Respondent engaged in conduct that violated the policy.  If the panel determines the Respondent violated the policy, it will determine an appropriate sanction(s).

The hearing will be audio-recorded; the Hearing Panel's deliberations will not be recorded and shall remain private.  Neither the parties, nor any participants or observers, will be permitted to make any audio or video recordings.

The Hearing Panel may convene remotely or in person to conduct the hearing and its deliberations.   The hearing will be live and require the participants to simultaneously see and hear each other.  Hearings may be conducted with all parties physically present in the same geographic location, or at the request of either party, the hearing can occur with the parties located in separate rooms with technology enabling the hearing panel and parties to simultaneously see and hear the party or the witness answering questions.  While each party is addressing the Hearing Panel, the other party shall participate in the hearing remotely.

Both the Complainant and the Respondent have a right to participate in the hearing, but participation is not mandatory: neither party is required to participate in the hearing in order for the hearing to proceed, and the Hearing Panel may not draw a negative or adverse inference from a party's decision not to participate.  The Complainant and the Respondent both have the right to be heard by the Hearing Panel and may each decide whether to exercise that right in person or remotely.

**i. Title IX Hearing Process**

In a hearing that involves any allegation of sexual harassment as defined by the Title IX regulations, even where there are additional allegations not captured by the Title IX regulations, each party may question the other party and witnesses, through their advisor, directly, orally, and in real time.

Only relevant questions may be asked of a party or witness.  Before a Complainant, Respondent, or witness responds to a question, the Chair, in consultation with the Hearing Coordinator, will first determine whether the question is relevant and explain any decision to exclude a question as not relevant.  The Chair and Hearing Coordinator will be guided by the same relevance considerations set forth in Section VI.A.8 of this process.

D00000046

If a party does not have an advisor present at the live hearing, Dartmouth will provide an advisor, free of charge, who may be, but is not required to be, an attorney, for questioning on behalf of that party.

If a party or witness does not submit to questioning by the other party's advisors at the hearing, the Hearing Panel may rely on any statement of that party or witness in reaching a determination regarding responsibility. The hearing panel may not draw any inference from the decision of a party or witness to not participate at the hearing.

**ii. Other Prohibited Conduct Hearing Format**

In a hearing that involves Prohibited Conduct that falls outside of Title IX jurisdiction, the parties shall not directly question one another, although they may proffer questions for the Hearing Panel, which may choose, in its discretion, to pose appropriate and relevant questions regarding the limited issues under review in the hearing.

In reaching a determination, the Hearing Panel may rely upon any information provided in the investigative report, including the statements provided in the final investigation report that the Hearing Panel finds reliable and credible.  The Hearing Panel may not draw any inference from the decision of a party or witness to not participate at the hearing.

**b. Determination by the Hearing Panel**

After the Hearing Panel has concluded its review of the Final Investigative Report and any additional information provided during the hearing, the Hearing Panel shall convene to deliberate and render a determination.  The Hearing Panel shall deliberate to determine whether the evidence presented establishes, by a preponderance of the evidence, that the Respondent engaged in Prohibited Conduct in violation of this policy.

If the Hearing Panel determines that the Respondent is responsible for one or more violations of the Policy or other applicable Dartmouth policies, it will then deliberate as to an appropriate sanction as described below.  If the Hearing Panel determines that the Respondent is not responsible for one or more violations of the Policy or other applicable Dartmouth policies, the Chair shall prepare a written decision and rationale on behalf of the Hearing Panel, which shall be provided simultaneously to the parties and the Title IX Coordinator.

**3. The Sanctioning Process and Decision**

If the Hearing Panel determines that the Respondent is responsible for one or more violations of the Policy or other applicable Dartmouth policies, then, following the hearing on the finding of responsibility, the Hearing Panel will then deliberate as to an appropriate sanction.

The Policy prohibits a broad range of conduct, all of which is serious in nature. In keeping with Dartmouth's commitment to foster an environment that is safe, inclusive, and free from discrimination and harassment, the Hearing Panel has great latitude in the imposition of sanctions tailored to the facts and circumstances of each report, the impact of the conduct on the Complainant and surrounding community, and accountability for the Respondent. Sanctions should support Dartmouth's educational mission and federal obligations. Sanctions

D00000047

may include educational, restorative, rehabilitative, and punitive components. Some conduct, however, is so egregious in nature, harmful to the individuals involved, or so deleterious to the educational process that it requires severe sanctions, including suspension or separation from Dartmouth.

<u>The Hearing Panel may impose one or more sanctions, which may include any of the sanctions that are listed below or any sanctions that are identified for violations of the applicable conduct standard of the Respondent's school.</u>

The Hearing Panel may solicit information from the Complainant, the Respondent, the Title IX Coordinator, and any other Dartmouth administrator who can provide information relevant to a determination regarding potential sanctions, including information about, any previous violations of Dartmouth policies. The Hearing Panel may also review any written impact or mitigation statement submitted by the Complainant or Respondent.

In determining the appropriate sanction, the Hearing Panel shall consider the following factors:

- the nature and context of the conduct at issue;
- the impact of the conduct on the Complainant;
- the impact or implications of the conduct on the community or Dartmouth;
- prior misconduct for which the Respondent has been found responsible, including the Respondent's relevant prior discipline history, both at Dartmouth or elsewhere (if available), including criminal convictions;
- whether the Respondent has accepted responsibility for the conduct;
- maintenance of a safe and respectful environment conducive to learning, including whether there is a continued hostile environment on campus caused by the Respondent's conduct;
- the presence or absence of bias as a motivation for the Respondent's conduct;
- protection of Dartmouth community requiring extended protective measures or other sanctions; and
- any other mitigating, aggravating, or compelling circumstances in order to reach a just and appropriate resolution in each case.

Sanctions may be imposed individually or in combination. For violations of this policy, the following sanctions may be imposed:

- fine;
- restitution;
- educational/counseling requirement;
- warning;
- reprimand;
- Dartmouth probation;
- no-contact order;
- restriction from specific Dartmouth programs or activities;
- housing restriction/relocation;

D00000048

- restriction from Dartmouth employment;

- suspension;

- separation/expulsion;

- organizational loss of Dartmouth recognition;

- organizational removal from Dartmouth-owned housing; or

- loss of organizational insurance coverage.

The sanction shall be separation/expulsion from Dartmouth where:

- the finding of responsibility reflects that the Respondent, by use of physical force, threat, or providing alcohol or drugs to the Complainant with the intention to induce a state of incapacitation, engaged in either

(A) any form of sexual penetration (anal, oral, or vaginal), however slight, by a body part or object; or

(B) oral-genital, oral-anal, or genital-genital contact; or

- the finding of responsibility reflects that the Respondent engaged in any form of sexual penetration, oral-genital contact, oral-anal contact, or genital-genital contact, as described above, and was motivated by bias on account of race, color, religion, sex, age, sexual orientation, gender identity or expression, national origin, disability, or military/veteran status; or
- the Respondent has previously been found responsible for Sexual Assault.

<u>Sanctions will be imposed immediately. If a Respondent is found responsible and the sanction includes separation, they will be immediately removed from campus residentially and (depending on circumstances, and at the discretion of the Title IX Office, consulting as necessary with other members of the Title IX Team, if a Team has been appointed) either severely restricted in their movements on campus (e.g. only able to attend classes and labs) or in Dartmouth's Education Program or Activity or barred completely during the entirety of the appeal process.</u>  In cases adjudicated prior to the last day of classes, if the final sanction is separation from Dartmouth (i.e. suspension, suspension with conditions, or expulsion), the granting of credit for the semester and/or the awarding of a degree will be at the discretion of Dartmouth.  At any time, for example, for cases where the outcome has not been determined prior to the last day of classes, Dartmouth may place an administrative hold on the Respondent's transcript, make a transcript notification, or defer or withhold the award of the Respondent's degree.

## 4. Remedies

Regardless of the outcome, the Hearing Panel may recommend to the Title IX Coordinator additional remedies for the Complainant to address the effects of the conduct on the Complainant, restore or preserve the Complainant's access to Dartmouth programs and activities, and restore to the Complainant, to the extent possible, benefits and opportunities lost as a result of the Prohibited Conduct. The Hearing Panel may also identify remedies to address the effects of the conduct on Dartmouth community.

The Title IX Coordinator will review the remedies recommended by the Hearing Panel and will consider the appropriateness of continuing Supportive Measures on an ongoing basis.

D00000049

**5. Written Notice of Outcome**

The Chair will prepare the Hearing Panel's written decision and rationale, including the finding of responsibility or non-responsibility, and, if applicable, the sanction and rationale.  The Chair will issue the written notice of outcome to the Complainant, the Respondent, and the Title IX Coordinator within ten (10) business days following the conclusion of the deliberations.  The notice of outcome will include:

1. Identification of the allegations potentially constituting Prohibited Conduct;
2. A description of the procedural steps taken from the receipt of the Formal Complaint through the determination, including any notifications to the parties, interviews with parties and witnesses, site visits, methods used to gather other evidence, and hearings held;
3. Findings of fact supporting the determination;
4. Conclusions regarding the application of the Policy to the facts;
5. A statement of, and rationale for, the result as to each alleged policy violation, including a determination regarding responsibility, any disciplinary sanctions, and whether remedies designed to restore or preserve equal access to Dartmouth's Education Program or Activity will be provided to the Complainant; and;
6. The procedures and permissible bases for the Complainant and Respondent to appeal.

**C. The Appeals Process**

Both parties have the right to appeal the dismissal of the Formal Complaint, the final determination of responsibility and/or the resulting sanction based on the following limited grounds:

1.      Procedural irregularity that affected the outcome of the matter and/or sanction;

2.      New evidence, not reasonably available at the time of the hearing regarding responsibility or dismissal of the Formal Complaint, that could affect the outcome of the matter;[4]

3.      The Title IX Coordinator, investigator(s), or any member of the Hearing Panel had a conflict of interest or bias for or against Complainants or Respondents generally or the individual Complainant or Respondent that affected the outcome of the matter.

A concise written request for appeal must be submitted to the Title IX Coordinator within three (3) business days following delivery of the notice of the outcome.  Each party may respond in writing to any appeal submitted by the other party. Written responses must be submitted within three (3) business days following delivery of the notice of the written appeal.  Written requests for appeal submitted by one party will be shared with the other party.

Appeals are reviewed by a designated Appellate Authority.  Either party may challenge the Appellate Authority on the basis of conflict of interest or bias.  For cases involving undergraduate Respondents, the Title IX Coordinator shall have the discretion to designate as the Appellate Authority an administrator with appropriate training to serve as an informed and impartial decision-maker.  For cases involving graduate or professional student Respondents, the Appellate Authority shall be designated as follows:

D00000050

- For M.S./PhD students, the Dean of the Guarini School of Graduate and Advanced Studies shall serve as the Appellate Authority.

- For all other graduate and professional students, the Dean of the relevant School shall serve as the Appellate Authority.

The Appellate Authority's responsibility will be strictly limited to determining the issues on appeal.  If any of the appellate issues are substantiated by the Appellate Authority, the appeal will be granted.  If the appeal is denied, the matter is closed.  The Appellate Authority will notify the parties in writing of its decision within 10 days.

If the appeal is granted:

1. due to a procedural irregularity, the matter shall be heard by a new Hearing Panel or the Appellate Authority may remand the matter for further process to remedy the error (based on the nature of the procedural error);

2. due to the discovery of new evidence not reasonably available at the time of the initial hearing, the matter will be returned to the same Hearing Panel that originally heard the matter for reconsideration in light of the new evidence;

3. due to bias or conflict of interest, the matter will remanded for further action consistent with the appellate finding.

In the event of a reconsideration, the Appellate Authority will give the Hearing Panel instructions in writing regarding the nature and extent of its reconsideration.  The Hearing Panel will act promptly to reconsider the matter consistent with those instructions.  Following reconsideration, the finding of the Hearing Panel will be final and not subject to further appeal.  The Hearing Panel will notify the parties in writing of the outcome consistent with the time frames set forth in the hearing panel process.

### D. The Effect of Withdrawal and Level of Participation

If a Complainant or Respondent chooses not to answer questions, participate in an investigation, or attend a hearing, Dartmouth may continue its process and may issue sanctions if there is a finding of responsibility. Dartmouth will not draw any adverse inference solely from a Complainant's or Respondent's decision not to participate in the investigation or any form of resolution under this policy; however, the Complainant or Respondent should be aware that declining to participate in the investigation may impact the admissibility of certain information or the timing and outcome of the case.

At any time, Dartmouth may place an administrative hold on the Respondent's transcript, make a transcript notification, or defer or withhold the award of the Respondent's degree. Although a Respondent may withdraw from Dartmouth while the investigation is pending, this withdrawal may be considered permanent and the Respondent's transcript may note that there was a withdrawal pending a conduct investigation.  If a Respondent withdraws from Dartmouth, regardless of the status of the matter under this process, the Title IX Coordinator may proceed with further action as necessary to eliminate, prevent or address any impacts of the reported conduct on the institutional environment.

D00000051

The Complainant may also request to withdraw a Formal Complaint at any time before a decision is reached by a Hearing Panel.  Dartmouth reserves the right to make a determination via the Title IX Coordinator or Title IX Team whether to approve or deny this request but will strongly consider the Complainant's wishes as well as the safety of the broader campus community.

## VII. TIMEFRAME FOR COMPLETION OF INVESTIGATION AND DISCIPLINARY PROCESS

Dartmouth will seek to complete its investigation and disciplinary process, if any, in a prompt, fair, and impartial manner following the issuance of the notice of the investigation.  This process contemplates reasonably prompt timeframes for the major stages of the investigation and resolution process, but Dartmouth may extend any timeframe in this policy for good cause,. An extension may be required for good cause to ensure the integrity and thoroughness of the investigation; to comply with a request by law enforcement; in response to the unavailability of the parties, witnesses, or Advisors; based on the need for language assistance or accommodation of disabilities; or for other legitimate reasons, such as intervening breaks in Dartmouth calendar, finals periods, the complexity of the investigation, the volume of information or length of the written record, and/or the severity and extent of the alleged misconduct. While requests for delays by the parties may be considered, Dartmouth cannot unduly or unreasonably delay the prompt resolution of a report under this policy.

Reasonable requests for delays by the parties will serve to extend the anticipated time period for resolution of the report. The Title IX Coordinator, in consultation with the investigator, has the authority to determine whether an extension is required or warranted by the circumstances, and will notify the parties in writing of any extension of the timeframes for good cause and the reason for the extension.

Dartmouth's overarching goal is that all Complaints be investigated in a prompt, fair, and impartial manner. Although cooperation with law enforcement may require Dartmouth to suspend the fact-finding portion of a Title IX investigation temporarily, Dartmouth will promptly resume its Title IX investigation as soon as it is notified by the law enforcement agency that the agency has completed the evidence gathering process. Dartmouth will not, however, wait for the conclusion of a criminal proceeding to begin its own investigation and, if needed, will take immediate steps to provide appropriate Supportive Measures for the Complainant.

## VIII. INFORMAL RESOLUTION PROCESS

In recognition that a wide spectrum of conduct can constitute violations of Dartmouth policies, the Title IX Office may resolve reports informally as appropriate, based on the circumstances. The informal resolution process provides a mechanism for Dartmouth to take prompt action through the imposition of individual and community remedies designed to maintain or restore access to the educational, extracurricular, and employment activities at Dartmouth and to remedy the impacts of conduct on members of the Dartmouth community.

The informal resolution process may only be offered after the filing of a Formal Complaint.  However, at any time prior to reaching a determination regarding responsibility, Dartmouth may facilitate an informal resolution process that does not involve a full investigation and adjudication.

To proceed with an Informal Resolution:

D00000052

- Dartmouth must provide Complainant and Respondent with a written notice disclosing the allegations, the requirements of the Informal Resolution, the circumstances under which the parties are precluded from resuming a Formal Complaint arising from the same allegations, the right to withdraw from the Informal Resolution and resume the formal resolution process at any time prior to agreeing to a resolution; and, any consequences resulting from participating in the Informal Resolution, including what records will be maintained and if they will be shared; and,

- Both Complainant and Respondent must give voluntary, written consent to the Informal Resolution process.

The informal resolution process is not available to resolve allegations that an employee sexually harassed a student.  An informal resolution process is voluntary, and a Complainant or Respondent (if participating) can ask to end the informal resolution process at any time before its completion.  Before the completion of an informal resolution process, or if the resolution is not successfully concluded, the parties may request and Dartmouth may pursue the formal resolution process. If an informal resolution process is ended by request, any information obtained may be used in a subsequent formal resolution process and hearing.

Once a Formal Complaint has been resolved through an informal resolution process that involves the participation of a Respondent in lieu of disciplinary action, the matter will generally be considered closed. Both the Complainant and Respondent will receive written notice when participation in informal resolution will be considered a final resolution of the report.

Potential remedies include targeted or broad-based educational programming or training, supported direct conversation or interaction with the Respondent, and/or indirect action by the Title IX Coordinator. An informal resolution may include mediation, as deemed appropriate by Dartmouth, although Dartmouth will generally not pursue mediation where the Prohibited Conduct involves severe or egregious forms of Prohibited Conduct. Dartmouth will not compel a Complainant to engage in mediation, to confront the Respondent directly, or to participate in any particular form of informal resolution.

In all cases, the Title IX Coordinator or Title IX Team will have discretion to determine whether or not informal resolution or mediation is appropriate to the circumstances.  The determination to use informal resolution, and the particular form of informal resolution will be communicated in writing to the Complainant and the Respondent.  The Title IX Coordinator will maintain records of all reports and conduct referred for informal resolution, which will typically be complete within sixty (60) to ninety (90) business days of the initial report.

[1] Throughout this policy, the pronouns "they," "them" and "their" are used intentionally to be inclusive of all genders.

[2] When used in these procedures, the term Respondent refers to a Student who is reported to have violated the Policy.

[3] In the event any individual with a responsibility identified in this policy is a witness or has a conflict of interest that would compromise that individual's objectivity in discharging that responsibility, Dartmouth will appoint a designee.

D00000053

[4] The time frame for filing an appeal based on newly discovered information may be extended at the discretion of the Title IX Coordinator where the evidence could not reasonably have been discovered within the time frame and a compelling justification exists for its consideration.

D00000054